## Noble *versus* Cope's Administrators.

*Execution.—Decree, making distribution of money in court, conclusive as to all matters involved therein.—Effect of recital in bond of indemnity.*

1. A decree awarding money paid into court to one of several contesting execution-creditors is, if unreversed and unappealed from, conclusive that the party to whom the fund is awarded is, and that the contestants are not, entitled thereto: and all matters that could have been properly litigated cannot again be examined in a collateral action, such as an action brought by the sheriff on a bond of indemnity taken from one of the contestants, on payment to him of the amount of his execution before the return day, but which sum was paid, with the balance of the fund, according to the decree.

2. A recital in an indemnity bond that the money was made at the suit of the obligor, *inter alia*, will not estop the sheriff from enforcing it, after he has been compelled to pay the amount received by the obligor on his writ, to the successful execution-creditor.

ERROR to the Common Pleas of *Northampton county*.

This was an action of debt by Sarah Cope, Isaac Cope, and William Mutchler, administrators of Jacob Cope, late sheriff of Northampton county, deceased, against Frederick W. Noble, to recover a sum of money claimed to be due according to the condition of the following bond :—

"Know all men by these presents, That we, Frederick W. Noble and Theodore R. Sitgreaves, both of the borough of Easton, in the county of Northampton and commonwealth of Pennsylvania, are held and firmly bound unto Jacob Cope, sheriff of said county, in the sum of $1200, to be well and truly paid to the said Jacob Cope, sheriff as aforesaid, his executors, administrators, or assigns, to which payment well and truly to be made we do bind ourselves and each of us, our and each of our heirs, executors, and administrators, each and every of them firmly by these presents; sealed with our seals, dated the 20th day of July, A. D. 1855.

"Whereas, the said Jacob Cope, sheriff as aforesaid, has this day paid to the said F. W. Noble the sum of $578.91, being part of the proceeds of the sale of the goods and chattels of one Christian Klusmeyer, made under and by virtue of writs of *fieri facias* issued out of the Court of Common Pleas of said county, at the suit of the said F. W. Noble and one David Able. Now, therefore, the condition of the above obligation is such, that if the said F. W. Noble shall and do from time to time and at all times, save, keep harmless, and indemnify the said Jacob Cope, sheriff as aforesaid, of and from all suits, actions, claims, demands, accounts, or reckonings and damages whatsoever, for or by reason of the payment of the said sum of money, then the above obligation to be void, otherwise to be and remain in full force and virtue.

(Signed)  F. W. NOBLE.  [SEAL]
T. R. SITGREAVES. [SEAL]"

14 WR.—2

[Noble *v.* Cope's Administrators.]

It appeared from the evidence that Christian Klusmeyer was largely indebted to sundry creditors who had obtained judgments against him. Executions had been issued on these judgments at different dates and placed in the hands of the late Sheriff Cope (now deceased), under which the personal property of Klusmeyer, the defendant, had been levied and sold by the sheriff.

F. W. Noble, the defendant in this suit, was one of the execution-creditors of Klusmeyer, and claimed the right of property to the proceeds; and Sheriff Cope paid over to him before the return day of the executions the amount of the *fi. fa.* in Noble's favour against Klusmeyer, and took from him this bond of indemnity, agreeing to refund in case it should be found or determined that Noble's execution was not entitled to be paid from the proceeds of the sale. It was alleged by the plaintiff that subsequently to the execution of this bond, it was ascertained by judicial investigations that Noble's execution was not entitled to any part of the proceeds of the sale as against other execution-creditors of Klusmeyer, and by this suit the plaintiff sought to recover back from the defendant the money which the defendant agreed to refund according to the condition of the bond. The records given in evidence showed the following state of facts:—

On the 10th of July 1855, a *fi. fa.* was placed in the hands of Sheriff Cope, which had been issued upon a judgment in favour of Christian Collmar *v.* Christian Klusmeyer, for the sum of $6891.41. Sheriff endorsed on this execution: "Came to hand July 10th 1855, at five minutes before 11 A. M." The *fi. fa.* in favour of F. W. Noble is endorsed by the sheriff: "Came to hand July 10th 1855, at 8½ P. M." The executions were levied upon personal property, which was sold by the sheriff; and upon the execution in favour of Collmar the sheriff returned: "Levied upon personal property, schedule hereunto annexed, and sold the said personal property—$3600.48." On the 23d of August 1855 the sheriff was ruled to pay the money into court on the above execution; on the same day leave was granted by the court for the sheriff to amend his return; and on the 29th August 1855 Sheriff Cope paid into court the sum of $3395.31.

Certain other creditors of Klusmeyer had obtained judgments against him in the Common Pleas, and on the 7th of September 1855 several of these judgment-creditors, and among them F. W. Noble, the defendant, presented their petition to the court, in which they alleged that this judgment in favour of Christian Collmar *v.* Christian Klusmeyer was given for more than was due from defendant to plaintiff, with intent to hinder, delay, and defraud them, the creditors of Klusmeyer, and prayed that a feigned issue might be granted to try the facts. The same day the court directed an issue to be formed as prayed for, the petitioners to be plaintiffs and Christian Collmar to be defendant. March 24th

1857, this entry was made upon the record: "Feigned issue in this case is stricken off, rules discharged, and money in court, after deducting all costs attending the distribution, awarded to Christian Collmar upon his judgment No. 298, August Term 1855." Same day, check to Mr. Reeder, attorney for Christian Collmar, for $3172.31, also check for costs to H. F. Steckel, prothonotary, for $18.

The defendant requested the court to instruct the jury—

1. The plaintiff's intestate having levied on the property of Christian Klusmeyer, and sold the same upon the execution of Noble and Able, and so declared, and paid of the proceeds of sale to Noble to the amount of his execution, neither he nor his representatives can recover the money back in this action, even though another execution against Klusmeyer was in his hands previous to those of Noble and Able.

2. If the jury believe that Sheriff Cope, having Collmar's execution and Noble's in his hands at the same time, actually levied and made the money upon Noble's writ first, notwithstanding Collmar's writ was first received by him, the money thus made on Noble's writ was payable to Noble, and the verdict must be for the defendant.

3. Sheriff Cope having paid voluntarily to Mr. Noble the amount of the execution of Noble against Klusmeyer as money made upon his writ, neither he nor his representatives can now be permitted to aver or prove that the money so paid was not made upon Noble's writ.

4. As the bond in suit contains the recital that the money paid to Noble was made upon his writ, the bond is to be treated as having been given on condition that the money was so made, and Sheriff Cope and his representatives are estopped from alleging the contrary, and therefore the verdict must be for the defendants.

5. In any event neither Sheriff Cope nor his representatives can be permitted to assert that the money paid to Noble was made on any other than his writ, without first proving that he had given actual notice to Mr. Noble that he had returned to Collmar's writ that the money paid to Noble was made on Collmar's writ and was paid into court for distribution, and any decree of distribution made by the court without such notice to Noble, is nugatory as to Noble's rights in this action.

The court below (MAYNARD, P. J.), after stating the main facts of the case, charged the jury as follows:—

"This record shows that on the 24th of March 1857, the court appropriated and distributed the entire fund raised from the sale of the personal property of Klusmeyer on the several executions under and by virtue of which the sale was made. Whether that distribution was properly or legally made is not now an open question. The decree of the court is conclusive both in law and

[Noble *v.* Cope's Administrators.]

in fact. That it was distributed according to law we see no occasion to doubt from the inspection of the record.

" Sheriff Cope, as before stated, had paid over to Noble the amount of his execution on the supposition, it seems, that his execution would be entitled to payment from the proceeds. It would have been more prudent for the sheriff to have awaited the action of the court. But Noble wanted the money and was willing to give his bond to indemnify the plaintiff, in the event it should be decided by the court that his execution was not entitled to be paid from the proceeds of sale.

" The sheriff was ruled to pay the whole of the proceeds of the sale into court, notwithstanding he had paid over to Noble the amount of his execution. [Sheriff Cope paid the money into court, and the court decided that Noble's execution was not entitled to any part of the proceeds of the sale ; and the question now is, whether the defendant Noble is liable, according to the condition of his bond to indemnify the plaintiff for the mispayment of the money on Noble's execution.]

" The court instruct the jury that [the defendant is liable, and that the plaintiff is entitled to a verdict for the amount of money so paid by him to the defendant Noble, together with the interest · on the same from the date of the payment of the proceeds of sale into court by the plaintiff in obedience to the rule of court.]

" [Some points of law have been submitted to the court by the defendant's counsel, on which we are requested to charge the jury. In the view taken by the court of the legal liability of the defend· ant to the plaintiff upon the whole case, it is not. of any moment to the defendant that the court should answer the several points *in extenso*, and we return a negative answer to each, being of opinion that from all the evidence in the cause the plaintiff is entitled to a verdict,] and we direct that the evidence in the case shall be made part of the record."

Under these instructions there was a verdict and judgment in favour of the plaintiffs. Whereupon the defendant sued out this writ and assigned for error : 1. The admission of the record of the judgment in favour of Christian Collmar against Christian Klusmeyer ; 2. The admission of evidence to prove that Sheriff Cope had levied and sold the goods of Klusmeyer under the *fi. fa.* in favour of Collmar ; 3. The admission of the following docket-entry in the case of Christian Collmar *v.* Christian Klusmeyer :—

" And now, May 7th 1856, on motion of Mr. Goepp, the rule taken on 7th September 1855 is amended so as to read as follows : ' Rule to show cause why the above judgment shall not be vacated and set aside as to Philip Schoeneman, assignee of Samuel Schoeneman, Jacob Rineck, F. W. Noble, David Able, and Christian Fleming, judgment and execution creditors of defendant. Same day, petition of Philip Schoeneman, assignee of Samuel Schoene-

[Noble *v.* Cope's Administrators.]

man, Jacob Rineck, F. W. Noble, David Able, Christian Fleming, and John Maxwell, filed, praying that an issue may be formed between them and the said Christian Collmar, to try whether the judgment above set forth is not void as to them by reason of the same having been confessed for a sum larger than was actually due from the said defendant to the said Christian Collmar, with intent to hinder, delay, and defraud the creditors of the said defendant. Same day the court directed an issue to be formed as prayed for, and that the petitioners be the plaintiffs and Christian Collmar be the defendant.' "

So much of the charge of the court as is printed above in brackets, was also assigned for error.

*H. D. Maxwell* and *H. Green*, for plaintiff in error.—In answering our second point in the negative, the court below declared that it was of no consequence that the sheriff had actually made the money on Noble's writ, and took away from the jury the inquiry whether in real verity the sheriff had thus made the money, because it was an immaterial fact—and constituted no defence. We asserted, as the bond asserted, that he had made our money as commanded by our writ, whence it followed that he should have paid us the money—that we were legally entitled to have it from him ; and yet the court say that this undoubted legal liability to pay us the money was no defence to the claim for indemnity for not thus paying it. Surely in this there was error. The negative answer admits our right to demand and receive the very money now in controversy, and yet holds that we are bound to repay it. In effect, we could legally require the sheriff to pay us this $578.91, and yet he can legally require us to pay it back to him. We conceive the adjudications amply demonstrate the error of the answer. See McLelland *v.* Slingluff, 7 W. & S. 134 ; Watmough *v.* Francis, 7 Barr 206. We showed, and such is the hypothesis of the point, that Sheriff Cope had really levied and sold under our writ, and we argued he was liable to pay us the money. The fact that he had Collmar's writ first is no answer, since he chose to disregard that fact and execute our writ first. Under the decisions just cited his liability to us became clearly established ; and he showed his sense of this liability by paying us the money thus made on our writ.

The question whether the sheriff had levied and sold under our writ was for the jury. For, 1st, it was raised and put in issue by the pleadings, and the parties were thus placed in the very position they would have occupied if the action had been for a false return brought by Noble *v.* Cope. The truth of Cope's return to Noble's writ was the very identical issue which the jury were sworn to try. And, 2d, even if this were not so, the sheriff's return to Noble's writ was not conclusive, because it was set up by himself in his

[Noble *v.* Cope's Administrators.]

own action.   The rule that a sheriff's return is conclusive is limited to controversies between third parties, and does not hold where the return is set up by the sheriff, either in support or defence of an action in which he is himself a party : Sheerer *v.* Lautzerheizer, 6 Watts 551.

It cannot be said there was no sufficient evidence to warrant the court in leaving the question to the jury, for the case was full of such evidence, and there was not a tittle of contradictory or explanatory testimony in the cause ; yet it was entirely overlooked or disregarded by the court below.   The view of our defence taken by the learned President of the Common Pleas, we respectfully submit, was an entire misconception of our case.   The court looked upon it as a contest between two execution-creditors for the proceeds of sale after they were paid into court, each claiming priority of right.   That Mr. Noble participated in the contest, preferring then the same claim he now makes ; that the Court of Common Pleas heard and adjudicated his claim, deciding against him ; and therefore, his claim having been already disposed of, cannot be set up here.   This is all a mistake.   There was no contest between Noble and Collmar upon a question of priority of right for the proceeds of sale in court.   A petition is alleged by the record entries to have been filed, asserting that Collmar's judgment was fraudulent and praying for an issue to try that fact, and an issue was awarded, but it was never tried.   There was no adjudication upon the question.   If there had been such an adjudication it would not have determined any question of priority of right, as among the execution-creditors.   This latter question could not have arisen, for the court and all the execution-creditors were bound, as to all such questions, by the return which Sheriff Cope. saw fit to make to Collmar's writ.   There was no discretion left. The court was bound to award the money to Collmar.

Mr. Noble was not a party to the petition for an issue.   There is a record entry declaring him to be such a party, but such an entry cannot suffice to prove such a fact.   The very utmost it could prove would be that a petition was presented purporting to be signed by him.   Proof of the direct fact of signature must have been made in the ordinary way, to charge him with the consequences of such signature.   He denies the signing of such a. petition.   No one ever saw such a petition.   No kind of proof of contents was offered, not even the existence of the paper was shown ; so that no proper ground for proof of contents was laid, and no such search as the law requires was made for the petition. See Porter *v.* Wilson & Kelly, 1 Harris 641.

Even if there was such a petition and Noble had signed it, and the issue had been tried, it could not have prejudiced his defence in this case, because the two questions raised are entirely distinct. He had a right, knowing at that time that Sheriff Cope had entirely

changed his ground in reference to his writ, to take his chance of success on another and totally different question.  If he could defeat Collmar's judgment because it was fraudulent, he could get part or all of his money out of the fund in court in that mode, and thus avoid the necessity of a lawsuit with Cope on the question of the falsity of his return.  There is no sound reason why he could not buy his peace in that manner, without prejudicing his right to avail himself of his defence against the bond, when his defence was founded not upon the invalidity of Collmar's judgment, but upon the falsity of Cope's return.  The latter defence grows exclusively out of Sheriff Cope's own act, while with the former question he had nothing whatever to do ; and yet we were denied the benefit of a controversy upon the one, because the court below thought it was identical with the other.  Noble might be liable to the sheriff on the bond in suit, if his own judgment could be successfully impeached by the other creditors, and therefore he would have a distinct personal interest in contesting Collmar's judgment as fraudulent, as he would thereby take from him his character of creditor and deprive him of the opportunity to contest his own judgment.  If we are correct, the error of the court in denying our first and second points was manifest.

Our third and fourth points affirm the proposition that Sheriff Cope and his representatives are estopped by his act of paying us the money as made on our writ, and by the averment in the bond that the money was so made, from now denying that he levied and sold the goods of Klusmeyer under our writ and thereby made our money.  He was the sheriff of the county, and as such executed our writ.  He alone knew whether he had made our money.  He had the power to sell under our writ without any regard to other writs, and no man but himself could know, conclusively, whether he had done so or not.  In his capacity as sheriff he declared that he had done so, and paid us the money because he had made it.  He could not have paid it to us in any other way, nor for any other reason.  The law will not, in such circumstances, presume, or permit the presumption, that he had made the money on any other writ than ours : Deichman v. The Northampton Bank, 1 Rawle 54.

There is no pretence that Noble exerted any influence with him to induce the sheriff to pay him the money, and we insist that the averment in the bond constitutes an estoppel by deed.  See 1 Greenl. Evid. §§ 22, 23 ; Crowell v. Meconkey, 5 Barr 168 ; Jackson v. Harrington, 9 Cowen 86 ; 1 Greenl. Ev. § 24 ; Jackson v. Brooks, 8 Wend. 424 ; Speake et al. v. The United States, 9 Cranch 28 ; Denn v. Cornell, 3 Johns. Cas. 174 ; Allen v. Lucket, 3 J. J. Marsh. 164 ; Stockton v. Turner, Id. 655 ; Wilkins v. Dingley, 29 Maine 73 ; 2 Abbott's N. Y. Digest 585, pl. 71.

[Noble *v.* Cope's Administrators.]

In addition to the recital in the bond, there is every ingredient of estoppel *in pais* to bar the plaintiff from denying that the money was made on our writ. He voluntarily paid us the whole amount as money made on Noble's writ. On the faith, and in consequence, of that payment, this bond was given. And now, if the contrary is permitted to be shown, we will be mulcted in all the costs and expenses of the litigation upon the bond, and be obliged to refund the money, with interest besides. See Eldred *v.* Hazlett's Administrator, 9 Casey 307 ; Waters's Appeal, 11 Id. 523.

Lastly, we insist that if the money was really made on Collmar's writ, the bond in suit is void as against the policy of law, and therefore there can be no recovery on it. See Addison on Contracts 92, 93 ; Chitty on Contracts 677, edit. of 1848 ; Ayer *v.* Hutchins *et al.*, 4 Mass. 370 ; Denny *v.* Lincoln, 5 Id. 385 ; Moore *v.* Allen, 3 J. J. Marsh. 621 ; Wright *v.* Lord Verney, 3 Doug. 241 ; Columbia Bridge *v.* Haldeman, 7 W. & S. 233 ; Swan *v.* Scott, 11 S. & R. 155 ; Eberman *v.* Reitzel, 1 W. & S. 184 ; Freeman *v.* Smith, 6 Casey 264 ; Watmough *v.* Francis, 7 Barr 206 ; Smith *v.* Whildin, 10 Id. 39 ; Mitchell *v.* Vance, 5 Monr. 529 ; Gilmore *v.* Lewis, 12 Ohio 281 ; Callagen *v.* Hallet, 1 Caines 104.

*O. H. Meyers* and *Max Goepp*, for defendants in error.—The court below, in their charge, after declaring the legal liability of the defendant, upon the whole case, state " that it is not of any moment to the defendant that it should answer the points of law submitted by the defendant's counsel, *in extenso*, and we return a negative answer to each, being of the opinion that from all the evidence in the cause, the plaintiff is entitled to a verdict."

It is alleged that there was error in thus answering the second of defendant's points. That the court denied the truth of the naked legal principle therein contained, and for that reason took from the jury the determination of a fact upon which that legal principle is based. The error is in the hypothesis of the point itself, and that the whole case as presented required the interposition of a jury to determine the hypothecated fact in support of which the plaintiff in error utterly and entirely failed to adduce any evidence.

This is what the court meant when they charged in connection with their answer, viz. : " that the defendant is legally liable on the whole case, and that from all the evidence in the cause the plaintiff is entitled to a verdict."

Where is the evidence that the sheriff " made the money upon Noble's writ first," and ignored and abandoned the Collmar writ which had been first delivered ? The position taken by the plaintiff in error at the time the bond was given, was that his execu-

[Noble *v.* Cope's Administrators.]

tion had been first legally delivered to the sheriff.   On the trial some evidence was given that a jailer had no authority to receive and endorse writs.   That position is abandoned, as the point admits that " Collmar's writ was first received by him" (the sheriff).   But it was not a question of fact.   The fact that the Collmar writ was first delivered at the sheriff's office, and by his agent properly endorsed, was not disputed, and according to the case of Mifflin *v.* Will, 2 Yeates 177, it was a delivery to the sheriff.   It was a legal question, and so determined by the court below.

It is said that Klusmeyer's property was first levied upon under the Noble and Able writs.   This is conceded; but it is equally true, and proved by the same witnesses, that within an hour afterwards the sheriff levied under the Collmar and other writs on all of Klusmeyer's personal property.   It is moreover true, and proved by the same witnesses, that when he levied under the Collmar writ he made a written levy, which he endorsed upon and returned with the Collmar writ.

But what benefit is the fact to Noble that the sheriff first *levied* under his writ?   Simply nothing.   See Jones *v.* Atherton, 7 Taunt. 56; Wintle *v.* Freeman, 11 Ad. & Ell. 548; Goldschmidt *v.* Hamlet, 6 Mann. & Gr. 190; Watmough *v.* Francis, 7 Barr 219; Wilson, Sieger & Co.'s Appeal, 1 Harris 426; Shafner *v.* Gilmore, 3 W. & S. 438; Hutchinson *v.* Johnston, 1 Term Rep. 729; Schuylkill County's Appeal, 6 Casey.

It is manifest, from these authorities, that a levy under a second execution enures to the first without an actual levy.   But here the sheriff did more.   He made within an hour after the first levy a more full and complete levy on the Collmar writ, reduced it to writing, and endorsed and returned it with that writ; neither of which was done on the Noble writ.   The facts not being disputed, the first levy on his writ did not benefit Noble any; it was a question of law for the court and not of fact for the jury.   The case of McClelland *v.* Slingluff, 7 W. & S. 134, does not apply, and is so held in Wilson, Sieger & Co.'s Appeal, 1 Harris 429.

It is further contended that the sheriff's declaration that " the executions I sell under are Noble's and Able's," was evidence of the fact that he sold not only first, but exclusively under those writs.   He did not say that he had abandoned the Collmar writ. That he sold under the Noble and Able writs was legally correct, as he sold in point of law under all the writs.

In Francis *v.* Watmough, 7 Barr 217, it was held, " that you cannot execute one writ without executing the other; the levy and sale on one is the levy and sale on both."   " It is not the less a levy and sale on the plaintiff's writ, that he had another writ in his hands, for, as we have seen, he levies and sells on all the writs."

It is also said that the sheriff, by voluntarily paying the money

[Noble *v.* Cope's Administrators.]

to Noble, showed his sense of liability. It was neither a voluntary payment in the sense used by the learned counsel, nor evidence of any fact. The requirement of the bond showed that Cope did not believe that Noble was in law entitled to the money. But it is further said that the bond (drawn and witnessed by his counsel, and signed by Noble and his surety), "contains the positive declaration that he had made the money out of Klusmeyer's property sold under his and Able's writ." Whose declaration? Not Cope's the obligee, but Noble's the obligor. It contains no such statement as a fact, that the sale was exclusively on the Noble and Able writs, or as a legal conclusion. It does not say that he made the money, &c., "but states that the money paid, being part of the proceeds of the sale of the goods and chattels of one Christian Klusmeyer, under and by virtue of Noble's and Able's writs." This does not exclude the fact of a sale under the Collmar writ, for in law there was a sale under all the writs. Coupled as it is with a condition to indemnify, it is illogical to give it the signification contended for by the learned counsel.

But Mr. Noble did not think that he was entitled to retain this money from the sheriff. He became a party to a feigned issue, and after an investigation the court awarded the money to Collmar. His bond having become forfeit by the payment of the money into court under a rule, and the distribution to Collmar, Noble now refuses to indemnify.

In Smith *v.* Emerson, 7 Wright 460, it was held that in a suit against a sheriff "his return to writs, always under his control, is always evidence for himself." See also Hyskill *v.* Given, 7 S. & R. 370, and Sheerer *v.* Lautzenheiser, 6 Watts 551.

The questions relied on by the plaintiff in error, as to the right of priority, arising from the delivery of the executions at the sheriff's office to his agent, or to the sheriff in person, and the levying and seizing first under the Noble and Able writs, and within an hour a subsequent levy and seizure under Collmar's writ, and endorsed and returned with that writ, are purely questions of law. So also the sale by the sheriff, being one ministerial act, was not a sale under the first, second, or any particular writ, but was in law a sale under all the writs in the sheriff's hands. Yet it is asked, that these matters as proved, are evidence of the fact that the sheriff's returns on the Collmar and Noble writs are false, in the face of their presumptive truth as the acts of the law. Not merely false in the ordinary sense of an untruth, but in that higher sense of a falsehood solemnly uttered and declared under an official oath. That they are evidence of the fact that Sheriff Cope was guilty of a gross violation of his official duty, and that he totally abandoned and ignored the Collmar writ in all his official acts of reception, levying, and sale. There is no shadow of evidence that he did so. We repeat that there was no error in the

[Noble *v.* Cope's Administrators.]

answer to the second point, inasmuch as in the language of the court below, that from the whole case, and from all the evidence in the cause, the plaintiff was entitled to a verdict.

The plaintiff in error insists that Sheriff Cope and his representatives are estopped from showing that the sale of Klusmeyer's personal property was not made exclusively under Able's and Noble's writs. Estoppels are creatures of equity, and are never allowed to defeat equity. They are not favoured, but are strictly construed: 1 Greenl. on Ev. §§ 22, 204; Pickard *v.* Sears, 6 Ad. & Ellis 475; Com'th. *v.* Moss, 10 Barr 530; Waters's Appeal, 11 Casey 526.

1. The sheriff misrepresented no facts to Noble. He speaks of the money as proceeds of sale under the executions of Noble and Able, but he does not say that he sold *exclusively* under those writs. The statement out of which the estoppel is claimed to arise was, at best, mere matter of description and identification; it was not a deliberate, solemn assertion of a material fact. Will it be pretended that Noble was deceived as to any *fact* by this recital? that he was led to believe that Sheriff Cope pledged himself to take the risk of treating the sale as made under Noble's and Able's writs only, when the very object of taking the bond was to protect himself against that risk?

2. Had Mr. Noble " no means of information?" He knew that the Collmar writ had been left at the sheriff's office before his own was handed to the sheriff, and that both were in the sheriff's hands at the time of sale. He is presumed to know the law as well as the sheriff; at any rate the same means of information were open to him. What was Noble induced, by this alleged representation, to do or to leave undone? To constitute estoppel, it must be shown that the party setting it up acted on the faith of the representation. It is intimated that Noble, but for this alleged misrepresentation, might have made his money in Lehigh or Carbon county. That he *might* have done is not enough; it must be shown that he *would* have done so. It does not appear that Noble knew of this property in other counties. It does not appear that he refrained from sending writs to those counties by reason of this representation. It does appear that he did not rely upon the sheriff's having decided to prefer his execution because he joined in a petition to contest Collmar's judgment, which would have been wholly unnecessary had he considered the sheriff bound by his supposed statement that he treated the sale as made exclusively under Noble's and Able's writs. Noble was not induced to do anything or to omit anything by the recital in the bond.

3. No act or omission arose out of the representation, and Noble will not be injured by allowing Cope to prove the truth. The court in distributing the money, decided that Collmar was entitled to preference over Noble. The state of facts on which that decision

[Noble *v.* Cope's Administrators.]

was made existed when Noble gave the bond, and was not brought about by anything Noble did or omitted to do in consequence of the bond. These suggestions, it is submitted, show that there is no foundation whatever for the alleged estoppel. It is said that Cope "alone knew whether he had made Noble's money." If by this it is meant that Cope knew anything more about either the facts or the law, we deny the assertion. He knew the facts and so did Noble ; he refused to take the responsibility of deciding the law, and Noble acquiesced in the refusal by giving the bond, which otherwise had no meaning. It is said that the bond contains a solemn averment that the money was made on Able's and Noble's writs exclusively, and not at all upon Collmar's. That also we deny. To make the bond intelligible it was necessary to make some statement as to the circumstances, otherwise the transaction would have been a mere private loan of money from Cope to Noble. The description of the money was necessary for the purpose of identification. It would have been perhaps more correct to say money made by the sale of Klusmeyer's goods under several writs, &c., without naming anybody ; or writs of Able, Noble, and others. That is the real meaning. The doctrine of estoppel does not apply to that which is mere description and not an essential averment : 1 Greenleaf on Ev. § 26.

It is insisted that Cope voluntarily paid Noble the money "as money made on Noble's writ." If by this it is meant that Cope undertook for himself to decide that Noble was entitled to the money, and that he, Cope, would award it to Noble and no one else, we deny the allegation. The giving of the bond shows that such was not the understanding and intention of the parties.

The court below were therefore right in negativing defendant's points on the question of estoppel.

The plaintiff in error contends that the bond upon which the action is brought is void, as being against the policy of the law. The whole argument on this point avoids and seeks to ignore the real question in the cause. There was a difference of opinion, and probably an honest one, as to whether Collmar or Noble was entitled to be first paid. The sheriff might have refused to pay any one until the court should have passed upon this question ; or he might have taken the responsibility of deciding it himself, thus assuming pecuniary responsibility for the correctness of his opinion. He declined to take the latter course, and in effect took the former, but consented to let Noble have the money in the mean time, substituting the bond for the money. What is there in this against the policy of the law ?

It is said "if the money was made on Collmar's writ it belonged to him." The sale having been made under all the writs, it became a mixed question of law and fact which one was first entitled. That a sheriff does not violate his duty by paying to an

[Noble *v.* Cope's Administrators.]

execution-creditor before the return day, is impliedly admitted. Here were several execution-creditors, each claiming to be first. One was able and willing to indemnify and wanted money; the other either could not give indemnity or was in no such haste for the money. Was it a violation of duty for the sheriff to give the money to the former and take his bond?

The doctrine contended for on the other side would avoid any and all bonds of indemnity to sheriffs and constables. Where there is no *bonâ fide* or apparently *bonâ fide* contest, the officer must do his duty without indemnity. Where there is a contest, his right to indemnity arises out of the chance of deciding the question in dispute erroneously, and against that chance he has a right to be indemnified, because the law does not suppose him to be omniscient, either as to facts or law. If he takes a bond it is valid, although given to induce him to do that which, as matters turn out, he had properly no right to do.

The case of Watmough *v.* Francis, relied upon by plaintiff in error, does not militate against our position. The court there say that a bond given to induce a sheriff to pay on a second writ moneys which *manifestly and indisputably* belonged to the first, would be against the policy of the law and void. That a sheriff cannot be compelled to decide doubtful questions, on the one hand, and that, on the other, bonds given to indemnify him for deciding them are valid, is settled in numerous decisions everywhere: Bonnel *v.* Dunn, 4 Dutcher (N. J.) 153; Shriver *v.* Harbaugh, 1 Wright 399; Chamberlin *v.* Beller, 18 N. Y. Rep. (4 E. P. Smith) 115; Illies *v.* Fitzgerald, 11 Texas 417; Forniquet *v.* Tegarden, 24 Miss. 96; McGehee *v.* Chandler, 15 Ala. 659; Jamieson *v.* Calhoun, 2 Speers 19; Saunders *v.* Harris, 4 Humph. 72. Was this bond given on condition that it should do an unlawful act, or commit a plain violation of duty? It was given on condition that he should pay the money to Noble. The money had been made by a sale of Klusmeyer's goods under executions. Noble was plaintiff in one of them. It was doubtful whether he or Collmar was entitled to be first paid. The sheriff could not be compelled to pass upon that doubt, and did not pass upon it finally. He did temporarily decide in Noble's favour, upon Noble's agreeing to keep him harmless. The court have decided that the sheriff decided erroneously, and now he calls on Noble to keep his promise. That is the whole transaction. There is nothing in it contrary to the policy of the law.

The opinion of the court was delivered, June 29th 1865, by

WOODWARD, C. J.—We are unable to see that the questions so ably discussed by the counsel of the plaintiff in error arise in the cause. It seems to us that they were all, perhaps with a single exception, concluded by the decree of March 24th 1857, awarding

[Noble *v.* Cope's Administrators.]

the proceeds of the sheriff's sale to Collmar's execution, in which decree Noble and the other execution-creditors acquiesced.    Let us look at the legal effect of that decree.

Collmar and Noble, and other judgment-creditors of Christian Klusmeyer, took executions against him on the 10th of July 1855, by virtue of some or all of which writs Sheriff Cope levied upon the defendant's goods, and sold them for more than three thousand dollars.    On the 23d August, having returned his writs, the sheriff was ruled to pay the money into court, and on the 29th of that month he paid in $3395.31.    Noble and other execution-creditors of Klusmeyer disputed the validity of Collmar's judgment, and got a feigned issue to test it, which depended until March 24th 1857, when the record shows this entry: " Feigned issue stricken off, rules discharged, and money in court, after deducting all costs attending the distribution, is awarded to Christian Collmar upon his judgment, No. 298, August Term 1855."

The writs of Collmar and Noble having both issued the same day, the question of priority was to be decided by the time at which they came to the sheriff's hands.    Collmar's writ was left with the jailer at the sheriff's office, in his absence on the morning, and Noble's writ was placed in the sheriff's hands on the evening of the 10th July.    Whether that entitled Collmar's writ to preference was one of the questions that must have been passed upon in the decree of distribution of March 24th 1857.

Then it was alleged, in behalf of Noble's writ, that the levy was made upon that, and not upon Collmar's, so that if Collmar's writ was indeed prior, Noble was entitled to the money, because it was raised upon his writ—an allegation which brought the sheriff's return of both writs and several disputed facts into litigation, and which were or might have been decided in the matter of distribution.    In his charge to the jury in the present case, the learned judge said, in respect of the decree of distribution, that " *the court decided that Noble's execution was not entitled to any part of the proceeds of the sale.*"

Such was undoubtedly the effect of that decree, and it was neither excepted to nor appealed from, but was acquiesced in by Noble, and all other creditors of Klusmeyer.    It concluded, of course, every issue that could have been properly litigated therein. With the exception of a question of estoppel, raised upon the bond in suit by the defendant's 4th point, every question discussed here ought to have been, and we are bound to presume was, discussed and decided then and there.    Surely we are not expected to reverse that decree in this collateral action.    Nor can it be considered as brought up by this writ of error.    Standing unreversed and unappealed from, it is conclusive as a decree of distribution, and establishes, by a final judgment of the law, that Collmar was entitled to the whole proceeds of the sheriff's sale.

[Noble v. Cope's Administrators.]

But before the sheriff returned the writs in his hands, he let Noble have part of the money—that is, he paid Noble's judgment out of the proceeds, and for his own indemnity took from Noble and Sitgreaves the bond in suit, dated July 20th 1855, which recites, among other things, that the moneys in his hands were made out of the goods of Klusmeyer, under and by virtue of writs of *fieri facias*, " *at the suit of the said F. W. Noble and one David Able.*" This is alleged to estop the sheriff from enforcing the bond of indemnity, and this question, I agree, was not affected by the decree of distribution.

Although the recitation is that of Noble and Sitgreaves, and not of Sheriff Cope, yet as he accepted the bond, and his personal representatives now claim under it, he is affected by all it contains as much as if he were the author instead of the acceptor of the instrument. But what is the extent of the estoppel ?

Sheriff Cope having several executions of different creditors in his hands against Klusmeyer, sold his goods and raised a sum of money which he had a right to distribute to creditors, but at his peril. He had a right also to retain the money in his hands until the return day of the writs, and then bring it into court for distribution by the court.

In these circumstances he allows Noble to take the amount of his execution upon giving the bond of indemnity, which recites, as before stated, a sale by virtue of the writs of Noble and Able. But it does not assert that the sale was on those writs alone. It is a fair construction of the recitation that the sale was made on the writs of Noble and Able, in connection with the other writs in his hands. Where a sheriff levies and sells goods by virtue of several writs of *fi. fa.*, that which first came to hand will be entitled to priority, but if the levy and sale be exclusively on a writ which came to hand subsequent to another, the subsequent writ will take the money : McLellands v. Slingluff, 7 W. & S. 134 ; Watmough v. Francis, 7 Barr 206 ; Shafner v. Gilmore, 3 W. & S. 438 ; Wilson's Appeal, 1 Harris 426.

The sheriff's return of the writs showed that he levied and sold by virtue of Collmar's writ as well as by virtue of those of Noble and Able, and the decree of distribution established the priority of Collmar's writ. Now, we see no necessary inconsistency between these facts and the recitation in the bond. Estoppel excludes truths which are inconsistent with itself, but not such as agree with it. Whether the fact be so or not, we are bound to presume as against the sheriff, that he levied and sold by virtue of the writs of Noble and Able, but we are not forbidden to believe, from other evidence, that he levied and sold also by virtue of Collmar's writ.

Then, upon this state of facts, the ultimate and final conclusion of law was that Collmar was entitled to the money, but on the

·[Noble *v.* Cope's Administrators.]

20th July 1855 the sheriff did not so understand it, or he would have paid no money to Noble. And yet he did not recognise Noble's absolute right, else he would not have taken the bond of indemnity. The bond must be so construed as to stand in place of the money during the interval of doubt and litigation. If effect were given to the recitation according to the argument, the bond would be nullified, and had as well not have been given. Without the bond Noble would not have got the money, for the sheriff was not bound to pay it to him till the court had passed upon his right, and the express purpose of the bond was to "*indemnify the said Jacob Cope, sheriff as aforesaid, from all suits, actions, claims, demands, accounts, and damages whatsoever, for or by reason of the payment of said sum of money.*" The bond stood instead of the money, and meant that if the money should be finally adjudicated to some other creditor, Noble would return it to the sheriff. On the 24th of March 1857, it was adjudicated to Collmar, and was paid by the sheriff, whereby his right of resort to the bond became complete. To give the extravagant effect to the recitation of the bond which is claimed for it would defeat a transaction that was plain and fair on its face.

Another question was argued that was not raised in the court below, that the bond was void on account of illegality of consideration. This is an ungracious defence for a party to set up who got the use of money that should have remained in the sheriff's hands. If it were fairly upon the record, it would not be worthy of support, but as it was not made in the court below we will not consider it.

We see nothing in the errors assigned to justify a reversal, and therefore the judgment is

Affirmed.