## Zeigler, Appellant, *v.* Simplex Foundation Company.

*Negligence—Master and servant—Fellow servant.*

1. In an action against an employer to recover damages for the death of a workman killed by the falling of the weight of a pile driver under which he was working, a nonsuit is properly entered where the evidence shows that there was no defect or break either in the apparatus or the engine which ran it, and the only evidence as to the action of the engineer before the accident, was that he made a motion which would cause the hammer to rise but not to fall; and there is no evidence that the engineer was incompetent, or if he was, that the defendant knew of his incompetency, or that it was the cause of the accident.

*Evidence—Expert testimony—Opinion.*

2. Expert opinion should not be allowed to be expressed upon a state of facts not supported in some measure by evidence.

Argued March 23, 1910. Appeal, No. 69, Jan. T., 1910, by plaintiff, from order of C. P. No. 3, Phila. Co., Dec. T., 1906, No. 4,857, refusing to take off nonsuit in case of Louisa Zeigler v. Simplex Foundation Company. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband. Before FERGUSON, J.

At the trial the court entered a compulsory nonsuit which it subsequently refused to take off, FERGUSON, J., filing the following opinion:

We have given careful consideration to the evidence in this case and are of opinion the motion to take off the nonsuit must be overruled. The deceased was killed by the falling of the weight of a pile driver under which he was working. The weight, by the direction of the deceased, who was foreman of the gang of men, had been raised in order that the follower block might be blown out. The particular work upon which the men were engaged was the driving of steel tubes into the ground for the purpose of making concrete foundations, and the follower block was a contrivance of wood which received the blow of the hammer on the top of the tube in order to avoid the effect of metal striking metal. This follower block having become in some way jammed, it was necessary to remove it by boring a hole with an auger and blowing it out by gunpowder. It was upon this work that the deceased was engaged at the time he was killed. The engine was supplied with two drums, on one of which was wound the steel wire rope attached to the hammer. When steam was applied and the engine started this drum would not move unless the lever attached thereto was depressed. The effect of this motion would be to cause the drum to revolve in a direction to raise the hammer. If the lever were then raised to a vertical position the drum would revolve in the other direction and the hammer would fall. To raise the hammer and to hold it suspended and motionless it was necessary to depress the lever until the hammer reached the desired point, and to insert a metal clutch called a dog. It was impossible for the drum to revolve so long as the clutch remained in place. If, however, the lever was depressed and the drum revolved in the direction to raise the hammer, the dog would fall out, thereby enabling the drum to revolve in the other direction upon the raising of the lever.

There was no dispute as to the mode of operation of the engine and the drum.

Upon the day when the deceased was killed, he instructed the engineer to raise the hammer, to dog the drum and to go away from the engine. Zeigler, the deceased, and another man then proceeded to bore out the follower block, and while so engaged the hammer fell and Zeigler was killed. One witness testified he was watching the engineer, who stood in front of his engine, and that he made no motion or movement of any kind, and that when the hammer fell he saw that the engine was running, and that the engineer had the lever down and was bearing his weight on it.

The hammer fell in the manner it was designed to fall. There was no break in the wire rope, neither was there a change in the course in which the hammer was to fall. There was not a particle of evidence to show any defect in the engine or in the hoisting apparatus. The conclusion that will naturally follow the reading of the evidence is that the witness who testified that the engineer made no motion was mistaken, and that in point of fact the engineer did make the movement to press the lever down, thus releasing the dog, followed by a raising of the lever, which caused the hammer to drop, and an immediate lowering of the lever for the purpose of raising it again, and it was in this last position of pressing the lever down which the witness said was the only position in which he saw the engineer. But the jury was not constituted to find facts outside of the evidence. There was no evidence of any previous motions of the engineer. In fact, the evidence is he made no previous motions and there was nothing before the jury but the fact that the engineer's only position was one in which the hammer would be raised. We have, therefore, an engine and a hoisting apparatus, as to which there is no evidence of defect or break, and an accident resulting from a proper action of the apparatus, though as a result of a movement of the engineer which would not cause that action. The court

could not allow the jury to guess at some cause for the accident other than that shown by the proofs. See Alexander v. Water Co., 201 Pa. 252.

In order to provide an explanation for the accident, certain questions were asked an expert while on the stand as to what might happen in case the spring which controlled the action of the drum were out of order, and upon objection being made the objection was sustained for the reason that expert opinion could not be allowed to be expressed upon a state of facts not supported in some measure by evidence. See Reber v. Herring, 115 Pa. 599. We think this ruling was proper.

The burden was upon the plaintiff to prove a negligent cause for the accident. She proved a machine without defect and a natural and proper movement of it, though, at an improper time, and that move accompanied by action of the engineer which would make the result impossible. The evidence therefore failed to make out a case of defective machinery, and if the case were left to the jury the cause of the accident would have been mere speculation. The plaintiff also contended that the defendant was negligent in that it had employed an incompetent engineer, and as a result of such incompetency Zeigler came to his death. In the absence of evidence to show what caused the hammer to fall, it is difficult to see how that result can be charged to the incompetency of the engineer. Where incompetence is alleged it is necessary to show a reputation for incompetency and to bring home to the defendant notice of incompetency and to show that such incompetency was the cause of the accident. The evidence certainly does not warrant a finding that the engineer had the reputation for incompetency, and as to the fact of incompetency being brought to the attention of the defendant, while it is true there was evidence that the superintendent, Edgerton, who, for the purposes of the case, could be considered a vice principal, did, on several occasions, criticise the engineer regarding his manner of running the engine, none of the things

which appear in the evidence would seem to justify a finding that the man was incompetent for his duties, especially in view of the fact that in the plaintiff's case there was evidence that the engineer was licensed under the laws of the state of Massachusetts to operate a hoisting engine. But, beyond this, as above stated, it is necessary, where incompetency is alleged, to show that the accident resulted from such incompetency. The hammer fell in this case in accordance with the usual manner in which it was operated. Its course was not changed and nothing was broken, and if a steel tube was underneath it to be driven into the ground by its weight, there was nothing in the way in which the hammer fell to suggest a lack of knowledge or experience on the part of the engineer. This assumes that the engineer made the movements which caused the hammer to fall. As there is no evidence that he made such movements, but rather the only movement he made was one which would cause the hammer to rise, it follows that were his incompetence proven, there is nothing to connect such incompetency with the accident. See Frazier v. Pennsylvania Railroad Co., 38 Pa. 104; Keystone Bridge Co. v. Newberry, 96 Pa. 246; Snodgrass v. Carnegie Steel Co., 173 Pa. 228.

It is also contended that the defendant was negligent in that the superintendent, Edgerton, was not present at the time of the accident, and that his absence constituted negligence on the part of the defendant. There was nothing in the evidence which would warrant a finding that the presence of Edgerton was necessary to the operation of the work of the gang of men. The deceased was the foreman and gave the orders to the men under him; Edgerton was the superintendent and in charge of the general work at that place. Unless the peculiar circumstances surrounding the work required the presence of the employer or his immediate superintendent, and the work could not properly proceed without the presence of one or the other, there is no merit in this branch of the

case.   We find no evidence which would warrant such a conclusion.

The motion to take off the nonsuit is overruled.

*Error assigned* was refusal to take off nonsuit.

*Claude L. Roth,* for appellant.—If a machine, after having been properly stopped, starts of itself, the fact unexplained is evidence of some defect in the machine which the superintendent should have discovered, and is therefore evidence of defendant's negligence: Byrne v. Boston Woven Hose & R. Co., 191 Mass. 40 (77 N. E. Repr. 696); Moynihan v. Hills Co., 146 Mass. 586 (16 N. E. Repr. 574); Lynch v. Stevens & Sons Co., 187 Mass. 397 (73 N. E. Repr. 478); Fountaine v. Wampanoag Mills, 189 Mass. 498 (75 N. E. Repr. 738); O'Neil v. Ginn et al., 188 Mass. 346 (74 N. E. Repr. 668); McConnell v. Penna. R. R. Co., 223 Pa. 442.

Circumstances warranting an inference of the existence of a defect in machinery are sufficient evidence of negligence without direct proof of the exact nature of the defect: Lyttle v. Denny, 222 Pa. 395; Delahunt v. United T. & T. Co., 215 Pa. 241; McCoy v. Ohio Valley Gas Co., 213 Pa. 367; Byrne v. Boston Woven Hose & Rubber Co., 191 Mass. 40 (77 N. E. Repr. 696); Kleibaz v. Middleton Paper Co., 180 Mass. 363 (62 N. E. Repr. 371); Stoner v. Fuel Supply Co., 40 Pa. Superior Ct. 599; O'Donovan v. Phila. Co., 223 Pa. 234; Martin v. Transportation Co., 185 Mass. 487 (70 N. E. Repr. 934); Willey v. Boston Elec. Light Co., 168 Mass. 40 (46 N. E. Repr. 395); Geloneck v. Dean Steam Pump Co., 165 Mass. 202 (43 N. E. Repr. 85).

*Thomas Leaming,* for appellee.—The court could not allow a jury to speculate and guess at some cause, contrary to the proofs, and thereupon infer negligence without evidence: Alexander v. Water Co., 201 Pa. 252; Ford v. Anderson, 139 Pa. 261; Johns v. Penna. R. R. Co., 226 Pa. 319.

Incompetency of the engineer would have to be proved; not by particular acts, but by reputation: Frazier v. R. R. Co., 38 Pa. 104.

Not only was there no proof of incompetency, but no actual or constructive notice thereof was brought home to the defendant: Keystone Bridge Co. v. Newberry, 96 Pa. 246.

There was no proof that the accident was caused by any incompetency: Snodgrass v. Carnegie Steel Co., 173 Pa. 228.

PER CURIAM, April 18, 1910:
The judgment in this case is affirmed on the well-considered opinion of the court below in refusing to take off the nonsuit.