# Salerno *v.* Philadelphia & Reading Railway Company, Appellant.

*Negligence—Railroads—Evidence.*

An action against a railroad company to recover damages for personal injuries cannot be maintained, where it appears that the plaintiff, an employee of a city contractor, while standing ten feet from the tracks of the railroad and under a bridge, was struck by a poker about ten feet long and about one and one-half inches thick, which fell upon him as an engine was passing, and there is no evidence whatever to show that the poker fell from or was thrown from the engine, and it appears that it might have dropped through the floor of the bridge.

Argued Dec. 16, 1910.  Appeal, No. 39, Oct. T., 1910, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1907, No. 2,489, on verdict for plaintiff in case of Vincent Salerno *v.* Philadelphia & Reading Railway Company.  Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.  Reversed.

Trespass to recover damages for personal injuries.  Before MAGILL, J.

The circumstances of the accident are stated in the opinion of the Superior Court.

The court charged in part as follows:
[At the point in question the railroad was crossed by a bridge which bridge carries the traffic of a public street over the railroad.  The abutments of the bridge stand on or within the right of way line of the railroad company, and it was on one of these abutments, within the street lines, according to the evidence, that the plaintiff was working at the time.  This being true, I say to you as a matter of law, that the plaintiff was lawfully on the premises engaged in necessary work for the city of Philadelphia within the lines of one of its streets which crosses the defendant's roadbed by means of an overhead bridge, the work of the plaintiff being the repair of the bridge itself

and upon one of the abutment walls thereof. He was not actually engaged in any business connected with the railroad, and therefore if injured through the negligence of the defendant's servants or agents without any negligence on his own part, the defendant would be liable for the consequences of such negligence. That I believe to be the law applying to this case. [2]

[I think you may, in applying your ordinary experience or your experience and common sense to the ordinary operation of railroads—I think you will have no difficulty in saying that it is not a common thing for engines to drop pokers of the kind described along the line of its route, and if through any fault of the operators of the engine a poker is thrown off the engine, dislodged and falls off, or is dislodged and falls off through not being placed in a safe position, and in falling injured a person who is lawfully in the position in which he is found, and is struck, I think you could very readily say and could very properly say that there was negligence in the handling of the poker by the men employed on the engine, whose duty it was to see that it was properly handled.] [3]

Defendant presented this point:

1. Under all the evidence in this case your verdict must be for the defendant. *Answer:* Refused. [4]

Verdict and judgment for plaintiff for $500. Defendant appealed.

*Errors assigned* were (2–4) above instructions, quoting them, and (5) in refusing judgment for defendant n. o. v.

*Wm. Clarke Mason,* for appellant.—The burden was upon the plaintiff to prove negligence, and the facts testified to failed to sustain the burden of proof: Patterson Coal & Supply Co. v. Rys. Co., 37 Pa. Superior Ct. 212; Joyce v. Black, 226 Pa. 408; Zeigler v. Foundation Co., 228 Pa. 64.

The plaintiff was a trespasser: Moore v. R. R. Co., 99 Pa. 301; Brague v. Ry. Co., 192 Pa. 242.

If the plaintiff was not a trespasser, and was lawfully on the right of way of the defendant company, and if there was negligence which caused the plaintiff's injury, such negligence was that of a coemployee under the Act of April 4, 1868, P. L. 58: Spisak v. R. R. Co., 152 Pa. 281; Keck v. R. R. Co., 206 Pa. 501; Mulherrin v. R. R. Co., 81 Pa. 366; Baltimore & Ohio R. R. Co. v. Colvin, 118 Pa. 230.

*William T. Connor*, with him *John R. K. Scott*, and *Adolph T. Kohn*, for appellee.—There was ample evidence on which the learned trial court was justified in submitting the present case to the jury for its determination: Joyce v. Capel, 8 C. & P. 370; Edgeworth v. Wood, 58 N. J. L. 463 (33 Atl. Repr. 940); Hershinger v. R. R. Co., 25 Pa. Superior Ct. 147; Hennessey v. Baugh, 29 Pa. Superior Ct. 310; Corpies v. Sand Co., 31 Pa. Superior Ct. 107; Lotz v. Hanlon, 217 Pa. 339; Sarver v. Mitchell, 35 Pa. Superior Ct. 69.

The appellee has shown more than the happening of the accident and resulting injury: Ahern v. Melvin, 21 Pa. Superior Ct. 462; Booth v. Dorsey, 208 Pa. 276; Keck v. R. R. Co., 206 Pa. 501; Richter v. Penna. Co., 104 Pa. 511; Christman v. R. R. Co., 141 Pa. 604; Noll v. R. R. Co., 163 Pa. 504; Kelly v. Traction Co., 199 Pa. 322; Hunt v. Ry. Co., 224 Pa. 604.

OPINION BY MORRISON, J., March 3, 1911:

On March 28, 1907, the plaintiff was employed by a city contractor engaged in repairing the abutments of a city bridge at Sixth street and Allegheny avenue, in the city of Philadelphia. The right of way of the defendant runs approximately at right angles under the bridge at that point and the abutments of the bridge are upon the defendant's right of way. The track nearest the abutment, upon which the plaintiff was working, was, as he testified, sixteen or eighteen feet from the face of the abutment; another witness made this distance about fifteen

feet. The plaintiff stepped back toward the track six feet from the abutment for the purpose of inspecting his work, with his back toward a passing engine which he heard coming. At the time of the accident he says he stood ten feet from the near rail of the track. While standing there he was struck on the head by an iron poker. At the time he was struck an engine marked "Philadelphia & Reading, No. 780," passed by. There was no testimony concerning the operation of the engine by the defendant, nor any evidence showing what caused the fall of the poker. No witness saw the poker fall from the engine, nor is there any testimony showing where it came from. The poker was of iron, from nine to eleven feet long, and said by witness to have been about one and one-half inches thick, having a hook at one end and a ring at the other. We have said there is no evidence showing where the poker came from. This is flatly asserted by appellant's counsel and just as plainly denied by counsel for appellee who contend that the poker fell from the engine. This controversy makes it necessary for us to examine the testimony closely and we have read and re-read every word of it.

The first witness who undertook to describe the accident was the plaintiff himself. He distinctly testifies that he did not see the engine coming and that after he was knocked down and got up he saw the poker lying on the ground and was told that he was struck by that instrument. There is absolutely nothing in this witness's testimony tending to show where the poker came from. He distinctly says he was hit by something and did not see what it was or where it came from until after. He says he was working under the bridge and the railroad track ran under the bridge, the latter carrying the street over the railroad, and that he was standing between the north railroad track and the north wall of the bridge. The next witness who attempts to describe the accident is Francesco Mastroudono who says that he was working with the plaintiff; that he saw the machine (meaning the en-

gine) passing by but did not see when the iron dropped. He says he saw the number of the machine or engine; that he saw when the plaintiff fell that the iron was near him and that the engine was going from the city, out of the city, and that it was a shifting engine. "Q. Did you see the poker fall from the train? A. No, sir; I saw it had fallen but I didn't see where it had fallen from or whether they had thrown it. Q. Did you notice whether there was any name on the engine which went by? A. The name of the Philadelphia & Reading was written on it. I saw that engine every day."

The next witness who was present at the accident was Marteo Germanioni. He testifies that he saw Salerno, plaintiff, fall down to the ground. Then further along he says: "Q. Did you see Mr. Salerno fall to the ground? A. No, sir; I saw him after that. Q. Did you see any poker near him after he fell? A. I see the poker—after I turned around back. I seen the poker fall across back of Salerno." In the cross-examination of this witness he distinctly says: "Q. You didn't see the accident? A. No; I saw after, because Salerno was lying on the ground." Again he says: "Q. Did you see the poker on the ground before he fell? A. No; I never saw it before he fell. I saw the poker on the ground. Q. Are you sure whether or not the poker was there before he fell? A. No; the poker fell from the engine. Q. Did you see the engine come up? A. I saw the noise of the engine passing on the track. I could not turn around every time an engine passed because I had to do the work. It would throw me behind all the time to watch the engine. I have to work." Although this witness said "The poker fell from the engine" yet his testimony is perfectly clear that he did not see the poker till it lay on the ground. He says, "I never saw it before it fell," so that it is clear that he was only giving an opinion when he said the poker fell from the engine.

The next witness, and the only other one who was present at the accident, was Pasquale Scarito. He testified

in his examination: "Q. Did you see Salerno fall? A. Yes, sir; I was carrying cement with my two hands at the time. I saw the iron bar fall from the engine. I was at a distance of three or four feet. I saw him on the ground and he was complaining of his head. Two or three minutes he was somewhat unconscious. We were together and he was always complaining of his head. We worked two or three months together and he always complained of his head. Q. Did you see the poker strike Salerno? A. Yes, sir. Q. Did you see where the poker came from? A. No, sir, the engine passed. I didn't see where it came from. The engine passed, and we saw that piece of iron on top of Salerno." So it appears that although this witness first says he saw the iron bar fall from the engine, yet he clearly did not mean that because he distinctly says in almost the next breath that he did not see where the poker came from; that he first saw the piece of iron on top of Salerno. We, therefore, say that the testimony of these witnesses taken together, and they are all the witnesses who testify to having been present at the accident, clearly and conclusively shows that no witness testified that the poker either fell or was thrown from the engine.

The learned court below submitted the case to the jury and there was a verdict and final judgment in favor of the plaintiff, and defendant appealed. The defendant's counsel argues three propositions in his effort to convict the court below of error: (a) Is the negligence of the defendant to be presumed by mere proof of the happening of the accident? (b) that the plaintiff was a trespasser and therefore he cannot recover; (c) is the plaintiff a coemployee with the crew of the engine under the Act of April 4, 1868, P. L. 58?

We will first dispose of propositions (b) and (c). In our opinion there is not sufficient evidence to warrant a discussion and citation of authorities as to these propositions. The testimony clearly shows that the plaintiff was in the employ of a contractor doing work for the

city of Philadelphia and at the time of the accident was engaged in making repairs to the abutments of a city bridge which carried the street traffic over the railroad tracks at the point of the accident. It is, therefore, idle to contend that the plaintiff was a trespasser while engaged in repairing the abutments of this city bridge. In our opinion there is also an utter lack of testimony to sustain the proposition that the plaintiff was in the situation which prevented him from recovering on account of his employment and the provisions of the act of 1868. We do not think under the conceded facts of this case that that act furnishes any obstacle to the plaintiff's right to recovery.

This leaves a single question for decision, Was there sufficient evidence of the negligence of the defendant's employees which caused the injury to plaintiff? We say this is the only question remaining because there is an utter lack of evidence of any contributory negligence on the part of the plaintiff. Is this case within the maxim "res ipsa loquitur?" In our opinion the conceded facts as proved by the plaintiff himself fail to bring the case within that rule. It is impossible, under the testimony, to determine where the poker came from. That it fell or was thrown from some point and injured the plaintiff is sustained by an abundance of testimony, but no witness testified that he saw the poker either fall or being thrown from the engine. Remembering that the plaintiff stood ten feet from the nearest rail of the track at the time of the accident it seems very certain that if the poker had simply fallen from the engine it would not have touched the plaintiff. He was standing on a level practically with the track on which the engine was running, and it is very apparent that if the poker had rolled or slipped off the engine it would naturally have fallen nearer the track and several feet from where the plaintiff stood. It, therefore, seems certain that the poker was either dropped through the floor of the bridge or it was pitched or thrown from the engine or from some other

point by some means which propelled it with considerable force.  There is no testimony as to the condition and character of the floor of the bridge but it is not an unusual thing to find cracks or holes in the floor of a bridge which would allow a poker an inch and a half thick to be dropped or fall through.  This poker may have been lying on the bridge and some mischievous person may have dropped it through and this, in our judgment, is just as reasonable a theory as that it came from the passing engine.

The learned counsel for appellee have made an able argument and have supported it with a large number of authorities, but it is all based on the assumed fact that there was testimony that the poker was seen to fall from the engine.  But the view we have already expressed on that subject relieves us from the necessity of discussing the cases cited.  The appellee's whole argument is based on the sentence found in the testimony of Pasquale Scarito, "A. No, the poker fell from the engine."  But as we have seen this witness did not mean to testify and did not testify that he saw the poker fall from the engine.  Taking the whole of his testimony together it becomes absolutely clear that he did not see the poker come from the engine but that he gave his opinion on that subject.  Conceding arguendo that there is sufficient testimony to warrant the jury in finding that the engine belonged to the defendant company and that the crew thereon were employees of that company, we still feel bound to hold that the learned court erred in submitting the case to the jury and in refusing judgment for the defendant non obstante veredicto.  The court was asked to instruct the jury that, "Under all the evidence in this case your verdict must be for the defendant."  This point was refused and the case sent to the jury, and after verdict in favor of plaintiff, defendant's counsel regularly moved for judgment non obstante veredicto, and when the court refused that motion and granted judgment on the verdict, defendant's counsel excepted and the court sealed a bill.

Of course the burden was upon the plaintiff to prove

negligence and we think the facts testified to failed to establish the negligence of the defendant. The case is ruled, we think, by a number of well-considered cases and among them we first call attention to Patterson Coal & Supply Co. v. Pitts. Rys. Co., 37 Pa. Superior Ct. 212. In that case the opinion was by our Brother PORTER and we think it is practically on all fours with the present case. The syllabus of that case is all that we think necessary to quote: "An action against a street railway company to recover damages for the death of two horses, cannot be sustained where the only evidence offered by the plaintiff is that a trolley wire broke, fell upon the horses passing beneath it, and killed them. In such a case the maxim res ipsa loquitur has no application.

"The maxim res ipsa loquitur is in itself the expression of an exception to the general rule that negligence is not to be inferred but to be proved affirmatively. The ordinary application of the maxim is limited to cases of an absolute duty, or an obligation practically amounting to that of an insurer. Cases not coming under one or both of these heads must be those in which the circumstances are free from dispute and show, not only that they were under the exclusive control of the defendant, but that in the ordinary course of experience, no such result follows as that complained of."

The next case we cite is Joyce v. Black, 226 Pa. 408. In it Mr. Justice BROWN, speaking for the court, said: "On the evening of June 8, 1906, the appellant was sitting on a chair on the pavement in front of a building No. 602, Liberty avenue, Pittsburg. While sitting close to this building and near the adjoining one—No. 600—an ornamental bracket from that building fell and struck him, and this suit is for the recovery of damages for the injuries sustained, due, as is alleged, to the failure of the appellee to have the bracket properly and safely fastened to the building. The learned trial judge properly refused to sustain the contention that the fall of the bracket was in itself evidence of negligence." We also cite the very

late case of Zeigler v. Simplex Foundation Co., 228 Pa. 64. In it the court below entered a compulsory nonsuit which it subsequently refused to take off and filed an interesting opinion which was adopted by the Supreme Court as follows: "The judgment in this case is affirmed on the well-considered opinion of the court below in refusing to take off the nonsuit." We think the syllabus of the case sufficiently indicates the principle we are considering. We also refer to Alexander v. Water Co., 201 Pa. 252, and quote from the syllabus as follows: "Where the plaintiff's case, in an action for damages for personal injuries, rests wholly upon a supposable theory, not supported by established facts, and from the same facts three other just as probable theories are deducible, and neither one of them imputes liability to the defendants, there can be no recovery. To permit it would be to allow a recovery on mere proof of an accident."

Appellee's counsel cite many cases, a number of them from other states, but they seem to rely with much confidence on Booth v. Dorsey, 208 Pa. 276, where the plaintiff was injured by being struck by a brick which descended from an upper floor of a building through which he was passing. Who threw or dropped the brick or how it came to fall could not be shown. It was, however, proved that the defendant's employees were engaged in throwing bricks upon a platform from which, if carelessly or too forcibly thrown, the bricks might roll off and fall. We think two sentences of the opinion by the Supreme Court clearly show the distinction between that case and the present one. There it was said: "Other evidence tended to show that there were no other persons in the part of the building from which the brick had come. In this way by showing that defendant's employees were in position to have caused the accident, and by the exclusion of any others, a sufficient prima facie case was made out to go to a jury." In the present case there was no evidence excluding any other cause and, therefore, Booth v. Dorsey is not in support of the plaintiff's contention.

We are of the opinion that the court erred in submitting this case to the jury and in refusing to enter judgment in favor of the defendant non obstante veredicto.

The judgment is reversed and the court below is directed to enter judgment upon the whole record in favor of the defendant non obstante veredicto.

ORLADY, J., dissents.