### PHILADELPHIA & R. RY. CO. v. CANNON.

(Circuit Court of Appeals, Third Circuit. February 27, 1924.)

#### No. 3047.

1. **Master and servant ⟺276(1)—Movement of cars toward another state on day after accident sheds no light on character on day of accident.**

In the absence of evidence showing previous routing homeward, movement of cars belonging to a railroad in another state toward such other state on the day after an accident sheds no light on their character as instrumentalities of interstate commerce, under the federal Employers' Liability Act (Comp. St. §§ 8657–8665) and the Safety Appliance Act (Comp. St. § 8605 et seq.).

2. **Master and servant ⟺276(1)—Evidence held not to sustain finding cars were instrumentalities of interstate commerce.**

Evidence that empty cars in a yard belonged to a railroad located in another state, and that the yard was a classification yard, did not sustain a finding that the cars were instrumentalities of interstate commerce outward bound, under the federal Employers' Liability Act (Comp. St. §§ 8657–8665) and the Safety Appliance Act (Comp. St. § 8605 et seq.); the classification being alternative in character, in that foreign cars were sent home only when not needed.

3. **Master and servant ⟺265(1)—Burden on plaintiff to show application of federal acts.**

One suing under the federal Employers' Liability Act (Comp. St. §§ 8657–8665) and the Safety Appliance Act (Comp. St. § 8605 et seq.), has the burden of showing that he is entitled to the benefit of such acts.

4. **Master and servant ⟺265(2)—Burden of proof on plaintiff to show negligence under federal acts.**

In an action under the federal Employers' Liability Act (Comp. St. §§ 8657–8665) and the Safety Appliance Act (Comp. St. § 8605 et seq.), plaintiff has the burden of affirmatively showing negligence.

5. **Master and servant ⟺278(1)—Evidence held insufficient to show negligence under federal acts.**

In an action, under the federal Employers' Liability Act (Comp. St. §§ 8657–8665) and the Safety Appliance Act (Comp. St. § 8605 et seq.), for death of brakeman, evidence *held* insufficient to sustain finding of negligence on the part of defendant.

⟺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Evidence ⬌553(4)—Hypothetical question must be based on facts in evidence.**
   A hypothetical question, calling for expert opinion, must be based on facts in evidence.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action by Maude Edna Cannon, administratrix of the estate of Howard C. Cannon, deceased, against the Philadelphia & Reading Railway Company. Judgment for plaintiff, and defendant brings error. Reversed, and new trial awarded.

Wm. Clarke Mason, of Philadelphia, Pa., for plaintiff in error.

Frank F. Davis, of New York City, for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. Cannon was a brakeman in a yard shifting crew of the defendant company at work in the Harrisburg yards. On the day in question it was desired to shift two shop cars from one part of the yard to another. These cars stood beyond and were attached to three Western Maryland battleship cars. To move the shop cars it was necessary to move the Western Maryland cars also, the purpose being, after the shop cars had been dropped, to return the Western Maryland cars to the same place. To effect this movement the engine, to which a car loaded with stone had been attached, backed this car against the first Western Maryland car and made a coupling. As it was proposed to move the entire draft, it was Cannon's duty to release the brakes on the cars that had been standing on the track. Ostensibly for this purpose Cannon passed between the two head Western Maryland cars. Two or three minutes later he was found lying on the ground on the other side of the draft at a place opposite that at which he had entered, having sustained injuries from which he died. His widow, as administratrix, brought this action to recover damages under the federal Employers' Liability Act (Comp. St. §§ 8657–8665) and at common law for violations of the Safety Appliance Act (Comp. St. § 8605 et seq.), alleging specifically a defective brake as the cause of death. Act June 11, 1906, 34 Stat. 232, and amendments; Act Feb. 4, 1887, 24 Stat. 379, and amendments. She had a verdict and judgment. The case is here on the defendant's writ of error.

Of the several questions raised by the assignments of error only two, in our opinion, require discussion. These are whether, on the evidence, the plaintiff brought herself within the federal Employers' Liability Act and whether she made out a case of negligence against the defendant.

[1-3] The first question rests on the character of the employment of the decedent at the time of his injury, and the character of his employment rests in turn on the character of the Western Maryland cars as instrumentalities of commerce at that time. There was very little testimony about these cars. They were, admittedly, owned by the Western Maryland Railroad Company and were in Pennsylvania. It was therefore presumed, on the plaintiff's theory, that they had

---

⬌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

come from Maryland into Pennsylvania on an errand of interstate commerce. Being empty, it was presumed they had arrived at their destination. The record is silent as to whether they had, since then, been used in intrastate commerce or were merely "drifting." Pennsylvania R. Co. v. Knox, 218 Fed. 748, 134 C. C. A. 426. Being in the defendant's yards at Harrisburg, where cars of all kinds are classified for transportation elsewhere, the plaintiff urges that, pursuant to a custom of the yards, these cars were in process of being routed homeward, and that, having (presumably) been instrumentalities of interstate commerce outward bound, they remained instrumentalities of that commerce homeward bound, and were, for this reason, of a character to bring the decedent's work of releasing their brakes within interstate commerce—a position somewhat at variance with Kozimko v. Hines (C. C. A.) 268 Fed. 507, 508, and Schauffele v. Director General (C. C. A.) 276 Fed. 115, 116. This contention is aided, the plaintiff maintains, by the fact that on the day after the accident the cars were routed to Lurgen, Pa., a connecting point between the Philadelphia & Reading Railway Company and the Western Maryland Railroad Company. This was all. We think it was not enough on which to submit the issue of interstate commerce. We are concerned, as was the jury, with the decedent's employment at the time of the accident. In the absence of evidence showing a previous routing homeward, the movement of the cars toward Maryland on the day after the accident sheds no light upon their character on the day of the accident. Thus we are, quite properly, brought back to the status of the cars on the day of the accident. On this there was no direct evidence. The evidence related to the yard custom we have mentioned. But this did not help the plaintiff because the custom was alternative in character in that, being classification yards from which all cars that came in are classified and sent out, foreign cars are classified according to railroad requirements. Sometimes they are sent to the hard coal regions; at other times to the stone quarries; and at other times to Lebanon to load ore—all within the State of Pennsylvania. As one witness tersely testified, "They were all worked home whenever we didn't need none." What was being done with the cars in question on the day of the accident—what was their destination, if any—was not shown. Indeed, nothing was shown beyond a purely local movement for a purely local purpose. Schauffele v. Director General (C. C. A.) 276 Fed. 115, 116. Therefore there was no evidence that would sustain a finding that they were, at the time, instrumentalities of interstate commerce, and, consequently, it was not proved that the decedent when working upon them was employed in commerce of that character. This may have been, and doubtless was, the best evidence of which the case was susceptible; yet we are constrained to hold that it was not sufficient and that, accordingly, the plaintiff did not affirmatively sustain the burden which the act imposes upon one seeking the benefit of its provisions.

[4, 5] The next question concerns the defendant's negligence. Here, too, the law imposes upon the plaintiff the burden of affirmative proof. She charged the defendant with negligence in operating a car with a brake containing variously described defects. No one

knows just how Cannon met his accident. No one was there; no one saw him. The first of the gang to reach him after he had fallen testified:

"When I first got to him I asked him what had happened and he said the brake had slipped and threw him off."

Another testified that, about thirty-five minutes after the accident, he "heard him say once that it kicked him." There was no evidence identifying the car from which Cannon fell. After the accident one of the crew went upon one of the cars, and at the trial testified as follows:

"Q. Did you try the pump handle brake on the rear of that car?

"A. Yes, sir.

"Q. Tell his Honor what condition you found it in.

"A. I found the brake in working condition, as far as I could pull it, but I was not as strong a man as Cannon was, you understand.

"Q. Did it stick on you?

"A. It went up against—it stopped at a certain point, and I could not get it over that.

"Q. Will you tell his Honor and the jury just whereabouts the lever was? Was it horizontal, perpendicular, at an angle, or where it was when it stuck on you and you could not get it over?

"A. It was in a horizontal position.

"Q. A horizontal position?

"A. Straight out."

Whether Cannon tried to release a brake and this was the brake or was one of the brakes on the car upon which he climbed was not shown.

This is all the direct evidence bearing on the condition of the brake. Counsel for the plaintiff, doubtless feeling, as we do, that this evidence alone would not sustain the averments of the complaint, produced a witness who had first qualified himself as an expert by inspecting the brake mechanism of Western Maryland cars generally—not the brakes of the particular cars in question. Counsel then propounded to him a hypothetical question, based in part on the evidence quoted and in part on no evidence at all. Excepting our bracketed comments, the question was as follows:

"Q. Assuming the case of a pump handle brake installed upon a Western Maryland battleship car, an operator, to wit, a brakeman, undertaking to loosen the brake [no evidence that Cannon undertook to loosen the brake], the shoes of which are set upon the wheels of that car [no evidence that the shoes were set upon the wheels of that car], or, in plain simple language, undertaking to loosen the brake [no evidence that Cannon undertook to loosen the brake], operating the pump handle in a horizontal position [no evidence that Cannon operated the pump handle in a horizontal position], and finding it to stick [no evidence that Cannon found it to stick], that is to say, not to move readily through the arc of the circle through which it would move if in good condition [no evidence that it did not move readily through the arc of the circle through which it would move if in good condition], and then, by exerting what appeared to be to him the necessary strength to pull it to its place [no evidence that Cannon exerted what appeared to him to be the necessary strength to pull it to its place], so that the brake shoes might be loosened, if confronted by a sudden sticking [no evidence to sustain this supposition], and then a slipping, by which he is thrown from the platform to the ground [of this there is evidence in Cannon's ante-mortem statements, not under oath, but which for present purposes may be regarded as admissible], are you able

296 F.—20

to say with a reasonable degree of certainty as to what was the cause of that slipping and sticking [no evidence of sticking] through which he was thrown ?"

After a long colloquy and exceptions, the witness answered that, [6] "There may have been one of several causes creating such' a condition.". He then recounted six. On cross-examination he admitted a possible seventh cause of the accident—corroborating the testimony of two other witnesses for the plaintiff—that unless the handle of such a brake is in full horizontal position the dog will not engage with the ratchet and that, in consequence, the ratchet will slip, thus leaving open the question whether Cannon by negligence of his own improperly operated the handle and brought about the accident. The hypothetical question was based mainly on facts assumed. It scarcely needs the citation of authorities to sustain the proposition that a hypothetical question calling for expert opinion must be based on facts in evidence. We are of opinion, therefore, that the question was improperly framed and the answer erroneously admitted. Zeigler v. Simplex Foundry Co., 228 Pa. 64, 67, 77 Atl. 239; Reber v. Herring, 115 Pa. 599, 608, 609, 8 Atl. 830; North American Acc. Ass'n v. Woodson, 64 Fed. 689, 695, 12 C. C. A. 392; Murray v. Railroad Co., 263 Pa. 398, 107 Atl. 21.

We are constrained to find that the plaintiff did not sustain the burden of proving affirmatively that the defendant was negligent in the manner she charged.

On both issues we are of opinion that the defendant's motion for a directed verdict should have been granted. The judgment below is therefore reversed and a new trial awarded.

BUFFINGTON, Circuit Judge, took no part in the consideration or decision of this case.