## Nazareth Foundry & Machine Company, Appellant, *v.* Marshall Machinery & Supply Company et al. (No. 1).

*Principal and surety—Bonds—Construction—Incomplete recital of principal contract—Extent of surety's liability—Purchase-price of machines—Incidental alterations—Alleged discharge of sureties.*

1. Where a bond conditioned for the payment of the purchase-price of certain machines to be constructed for the principal obligor, instead of making a general reference to the principal contract purports to recite a complete statement of its terms but omits the provision of the principal contract that "any special parts shall be charged extra," the liability of the sureties must be determined by the contract as recited in the bond and does not extend to such charges for extras.

2. There is no merit in the contention that the fact that certain changes were made in the machines without the knowledge or consent of the surety operated as a discharge of the suretyship obligation, where the changes were unimportant incidental alterations that did not change the character or style of the machines.

3. The fact that the plaintiff's statement claims the price of the extras in addition to the price of the machines does not operate to discharge the sureties from liability on the bond. The fact that a plaintiff lays in his statement a larger sum than is due him does not prevent him from recovering the amount which his proofs show to be due him on a valid contract.

4. In such case where plaintiff wrote the principal declining "to accept further orders from you until your account is cleaned up or unless you pay us cash for the same before you start," but did not refuse to complete the orders already accepted, plaintiff's right to recover for the machine already completed and delivered is not affected thereby.

5. Where a bond required the principal to pay within three days after the purchase-price had been received by it from the purchaser, or within four months of the date of shipment irrespective of whether the purchaser had paid by that time, the failure to comply with either alternative imposes liability on the bond.

Argued April 30, 1917. Appeal, No. 220, Jan. T., 1916, by plaintiff, from judgment of C. P. Northampton Co., July T., 1914, No. 29, on directed verdict for defendant,

in case of Nazareth Foundry and Machine Company **v.** Marshall Machinery and Supply Company, Frank J. Marshall, William B. Marx and Josephine W. Marx. Before BROWN, C. J., MESTREZAT, MOSCHZISKER, FRAZER and WALLING, JJ.  Reversed.

Assumpsit on a bond.  Before McKEEN, J.

The opinion of the Supreme Court states the facts.

Verdict for defendant by direction of the court and judgment thereon.  Plaintiff appealed.

*Errors assigned* were in directing a verdict for defendant, in refusing to enter judgment for plaintiff n. o. v., answers to points and rulings on evidence.

*W. H. Kirkpatrick,* of *Kirkpatrick & Maxwell,* for appellant.—The changes made in the two engines were immaterial and not sufficient to operate as a release of the sureties under any view of the case: Barclay v. Deckerhoof, 151 Pa. 374; Fitzpatrick et al. v. McAndrews & Collins et al., 12 Co. Ct. 353; Loughney v. Huntsman Construction Co. et al., 63 Pittsburgh 171.

The contract was a separable contract and evidence as to engines not involved in this suit should be excluded: Fullmer v. Poust, 155 Pa. 275; Lucesco Oil Co. v. Brewer, 66 Pa. 351.

*Edw. J. Fox,* with him *Jas. W. Fox* and *F. B. McAlee,* for appellee.—The changes made in the two engines constituted a departure from the contract which released the surety.

OPINION BY MR. JUSTICE MESTREZAT, June 30, 1917:

This is an action of assumpsit on a joint and several bond given to secure payment of the price of certain paper-making machines to be constructed by the plaintiff company for the Marshall Machinery & Supply Com-

pany, one of the defendants. It appears from the testimony that the Marshall Machinery & Supply Company owned certain patents used in connection with the construction of a paper-making machine. The company was not engaged in the manufacture of the machines, but, as it received orders for the machines, had them constructed by other companies and shipped direct to its customers. The Nazareth Foundry and Machine Company, the plaintiff, had been, since 1912, engaged from time to time in constructing such machines for the Marshall Company. The latter's machine was a well recognized type of a paper-making machine, and was built in two sizes, known as the small and the large size. In the autumn of 1913, the Marshall Company, having received a number of orders, entered into negotiations with the Nazareth Company for the construction of seven machines. During the negotiations, the Nazareth Company wrote a letter to the Marshall Company, under date of October 7, 1913, in which the Nazareth Company stated that its price for building the large machine or engine would be $964, and the price of the small machine or engine would be $672, plus the cost of material for the main shaft, and that it would furnish seven engines at the rate of two per month. The letter stated that "any special parts or changes will be charged extra." On October 8th, the defendants, the Marshall Company, with Frank J. Marshall, William B. Marx and Josephine W. Marx, as sureties, gave to the plaintiff a bond to secure payment of the price of the seven machines. Subsequently, and until after the bond in suit was given, a series of letters passed between the parties in which various minor changes in the machines to be manufactured were agreed upon. The formal orders for the machines involved in the present action were enclosed in a letter to the plaintiff, dated October 17, 1913. These orders embodied substantially all the changes specified in the letters.

The bond of October 8th was not satisfactory to the

plaintiff, and on October 30, 1916, another bond, executed by the same obligors, was substituted for it. The first recital in the last bond is as follows: "Whereas the Nazareth Foundry and Machine Company have entered into a contract for the construction of seven Marshall paper-making machines for the Marshall Machinery & Supply Company,......upon the following terms and conditions: The Nazareth Foundry and Machine Company to furnish all labor and material necessary for the construction and completion of said machines exclusive of the fillings which are to be furnished by the Marshall Machinery & Supply Company but installed by the Nazareth Foundry and Machine Company under the supervision of the representative of the Marshall Machinery & Supply Company. Zero brand of babbitt metal is to be used and is to be furnished by the Nazareth Foundry and Machine Company. The price to be paid for the construction of the small engines to be $672 per engine together with the cost of material in the shaft. The price to be paid for the large engines to be $964 for each engine. Two small engines and three large ones to be constructed and delivered during the month of November, 1913, if possible. And one small engine and one large one to be constructed and delivered as soon thereafter as possible." The bond is in the sum of $6,000, and is conditioned that the Marshall Company will pay to the Nazareth Company the price of each engine, constructed by it for the Marshall Company, within three days after the purchase-price has been received by the latter company from the purchaser of any such engine; or, on the expiration of four months from the date of shipment of any or all the machines, will pay to the Nazareth Company the respective amounts due for the machines, irrespective of the nonpayment for the machines to the Marshall Company.

The present action was brought on the bond of October 30th to recover the price of the small machine, No. 554, and of the large machine, No. 557. The plaintiff's

statement averred the execution of the bond, a copy of which was attached thereto, the performance by plaintiff of its terms and conditions, that the Nazareth Company had constructed and shipped a small machine, No. 554, and a large machine, No. 557, that the Marshall Company had refused to pay for either of the machines within four months from the date of shipment, as provided in the bond, and that the defendants were indebted to the plaintiff in the sum of $2,172.02 with interest. These prices exceed the prices stated in the bond by $107.12 for the small machine, and $428.74 for the large machine. An affidavit of defense was filed by the defendant company in which it denied its liability for the claim in suit, denied that the plaintiff had completed the two machines for which this action was brought, denied that the plaintiff company had performed its part of the contract, alleged that the plaintiff had refused to complete the machines, and set up a counterclaim as a set-off to the claim in suit. Josephine W. Marx, one of the defendants, filed a supplemental affidavit of defense in which she averred that she was a surety on the contract attached to the plaintiff's statement; denied that the Nazareth Company had kept and performed the terms and conditions of the bond; and alleged that it had refused to continue the manufacture of the machines in accordance with the contract; that the machines, as manufactured by the plaintiff company, were not the same as were in contemplation of the parties at the time of the execution of the bond but were different, more expensive and not the same machines concerning which she contracted in the bond; that there were changes and alterations in the machines made by the plaintiff company from the machines specified in her contract as surety; and that such changes and alterations were made without her knowledge and consent and operated to discharge her from her obligation as surety. The plea entered by all the defendants was non assumpsit.

The defendants offered no evidence on the trial of the cause, and, at the conclusion of the plaintiff's testimony, the court directed a verdict for the defendants. Subsequently, the learned trial judge filed an opinion in which he assigned, as his reasons for taking the case from the jury as to the sureties, that the pleadings and proof submitted by the plaintiff showed a change in the terms of the contract between the parties; that the plaintiff company had broken its contract by the letter of January 22, 1914, in which it had declined to accept further orders from the Marshall Company; and that no default was shown in the Marshall Company because the plaintiff was required "not only to show that the money had not been paid within four months but that the Marshall Machinery & Supply Company had received payment for the engines from the parties to whom they were sold and that the money was not turned over within three days" thereafter.

It will be observed that the price named in the plaintiff's statement for each of the two machines exceeds that stated in the recital in the bond. It is claimed by the plaintiff company that it has the right to recover not only the original price stipulated in the bond, but also the price of "any special parts or changes" which were to be charged extra under the terms of the contract for the construction of the machines. It is further claimed by the plaintiff company that if the liability of the sureties is limited to the price of the machines named in the bond, they are not discharged, but to that extent there may be a recovery in this action. The affidavits of defense set forth the contention of the defendants.

The single question involved in this appeal, as stated by the appellant, is whether the sureties on the bond in suit are discharged from liability by reason of the changes made in the machines under the provision in the contract for their construction that extra parts and changes shall be charged extra. In other words, the question is whether the sureties on the bond are dis-

charged from liability on their contract because of the additions to or changes in the machines made without the knowledge of the sureties, and in pursuance of a provision in the contract for their construction that "any special parts or changes will be charged extra."

We are of the opinion that the only contractual obligation assumed by the sureties is that set out in the recital of the bond, which recital is binding not only on the defendants, but on the plaintiff: Noble v. Cope, 50 Pa. 17; Young v. American Bonding Co. of Balt., 228 Pa. 373. It appears by the evidence, and is conceded that Mrs. Marx, one of the sureties, was not informed as to the terms or provisions of the contract entered into by the principal parties for the construction of the machines. Her liability, therefore, depends upon the proper interpretation of the contract recited in the bond which she admittedly, with the other obligors, executed. The recital in the bond is not simply a reference to a contract executed by the principal parties, but purports to be a complete statement of its terms and provisions. The recital first states that the two companies have entered into a contract for the construction of seven "Marshall Paper-Making Machines." If it had said no more, there would be some ground for the appellee's contention that it referred to the contract entered into by those parties, and might have incorporated the contract in the bond. Such reference to that contract would have put the sureties on inquiry and charged them with notice of what it disclosed. The recital, however, goes on and states that the contract, just referred to, was entered into "upon the following terms and conditions," and sets forth specifically and in detail the several provisions of the contract for the construction of the machines by the Nazareth Company. It contains the covenants of the contract to be performed by both parties. The price to be paid, as stated in the recital, is for a small engine $672, plus the cost of the material in the shaft, and for a large engine $964. We think the particularity with

which the terms of the contract are stated in the recital shows conclusively that the parties to the bond, the obligee and the obligors, intended that the liability of the latter should be defined and limited by the contract therein recited. Had it been otherwise, the parties would have stopped with the first declaration in the recital that the Nazareth and Marshall companies had entered into a contract for the construction of the machines. As already suggested, this would have been notice to the obligors that the two companies had entered into a contract, and that the bond was executed for the purpose of securing the performance of that contract on the part of the Marshall Company. Under those circumstances, the obligors would have been liable not only for the price of the machines, constructed as originally intended, but for all the extras which were added under the provisions of the contract. We are of opinion that the recital in the bond was intended to be the contract the performance of which the sureties guaranteed, and, therefore, the latter are not in any event liable for the price of the machines beyond the amount fixed in the bond. The extent of a surety's liability is strictly limited to that assumed by the terms of the contract: Amer. Telegraph Co. v. Lennig, 139 Pa. 594; 32 Cyc. L. and Pr. 109.

If our conclusion is correct that the liability of the sureties must be determined by the contract recited in the bond, has there been any change in that contract which discharges them from liability for the price of the machines stipulated in their contract? The contract provides that the Nazareth Company shall construct for the Marshall Company seven "Marshall Paper-Making Machines." For each of these machines, the Marshall Company was to pay the price stipulated in the contract, and it was secured by the bond in suit. As we understand from the evidence, and if there is any dispute as to the fact it is a question for the jury, the two machines, the price of which is sought to be recovered in

this action, are "Marshall Paper-Making Machines."
It is conceded by the parties that the Marshall machine
is a well recognized type of a paper-making machine,
and that the Nazareth Company, and, of course, the
Marshall Company, were fully acquainted with what
was designated as the Marshall machine. The two ma-
chines, the prices of which are claimed in this action,
are paper-making machines of the Marshall type. The
only changes made in the machines were certain addi-
tions, such as an enlarged base for the purpose of using
a motor drive instead of a shaft drive, an enlarged disk,
and certain other unimportant incidental changes, but
these alterations did not change the character or style
of the machines; they were still "Marshall Paper-Mak-
ing Machines." It appears by the evidence and is, in
effect, admitted by the appellee that the alterations and
additions made to the machines had no effect on their
working principle which continued to be the same after
the changes were made. It will be observed that the
contract recited in the bond, imposing liability upon the
sureties, gives no specifications as to the size of the base
or of the disk of the machine, nor does it refer to any
of the parts of the machine which have been altered or
changed. We are, therefore, unable to see how the con-
tract, set out in the bond, has been altered or changed
by the additions to the machines so as to relieve the sure-
ties from their liability to the extent assumed in the con-
tract. The plaintiff furnished two "Marshall Paper-
Making Machines," that is conceded, and this was in
strict compliance with the contract recited in the bond.
The "special parts" to "be charged extra" made no
changes in the name, style or working principle of the
machines, and, therefore, the machines furnished by the
plaintiff to the Marshall Company are such as are re-
quired by the contract. In what has been said, we have
assumed the credibility of the plaintiff's testimony and
that, as stated in the briefs of counsel, the facts are not
in dispute.

In the statement of the cause of action, the plaintiff claims for the price of the extras in addition to the price of the two machines as stated in the bond. The learned court below held that this indicates a change in the terms of the contract which discharged the sureties from liability on the bond. We cannot assent to this proposition. The fact that a plaintiff lays in his statement a larger sum than is due him does not prevent him recovering the amount which his proof shows to be due him on a valid contract. It frequently occurs that a larger sum than is actually due is claimed in the statement, but we know of no principle of law or of practice in this State which holds this to be a reason for invalidating a contract or preventing a recovery for the actual amount of the indebtedness. As we understand the opinion of the learned judge, this is the ground on which he sustains the contention that there was a change in the contract which discharged the surety. The contract with which we are concerned in this action is the one stated in the bond, and, if the plaintiff has observed its terms and the principal has defaulted, the sureties are liable for such default. As has already been pointed out, the parties seem to agree that the two machines in suit are "Marshall Paper-Making Machines," called for in the contract, recited in the bond, and were constructed and delivered by the plaintiff within the time stipulated in the agreement.

We think the learned court did not correctly interpret the letter of January 22, 1914, written by plaintiff to the defendant company. The plaintiff company, says the letter, declines "to accept further orders from you until your account is cleaned up or unless you pay us cash for the same before we start the work," but does not refuse to complete the seven engines for which orders had already been accepted. The plaintiff's testimony shows that the two engines in suit had been completed and delivered more than four months prior to the institution of the suit, and, the Marshall Company

having failed to pay the price of the engines, there was a breach of the condition of the bond for which the sureties are liable.

We think the learned court below was also in error in holding that both contingencies named in the bond must occur to impose liability on the sureties, namely: failure to pay for each machine within three days after payment by the customer, and failure to pay within four months after shipment. The two conditions, the nonperformance of which by the Marshall Company made the sureties liable on the bond, were in the alternative, and the failure to comply with either imposed liability. This clearly appears from the language of the bond. The conditions of the bond required the Marshall Company to pay within three days after the purchase-price had been received by it from the purchaser of an engine, or within four months from the date of shipment, "irrespective of the nonpayment for said machines to the Marshall Machinery & Supply Company." The plaintiff, therefore, was not required to aver or prove that the Marshall Company had received payment for the engines and had not turned the money over to the Nazareth Company, and, hence, the allegation in the statement, sustained by the proof, was entirely sufficient which averred that the Marshall Company had refused and neglected to pay for the engines within four months from the date of shipments.

What has been said sufficiently covers the single question which the appellant suggests is the point involved in the case, and, as we have repeatedly ruled, no other question will be considered. We are compelled to reverse the judgment and remand the record that the case may be tried in accordance with the views herein expressed.

The first and second assignments of error are sustained, the judgment is reversed, and a venire facias de novo is awarded.