454 A.2d 39

**RELIANCE UNIVERSAL, INC. OF OHIO, a corporation, Appellant at No. 225 Pgh. 81,**

v.

**ERNEST RENDA CONTRACTING COMPANY, INC., a corporation, t/d/b/a Ernest Renda Construction, Co., Inc. and Safeco Insurance Company of America, Appellant at No. 194 Pgh. 81.**

Superior Court of Pennsylvania.

Argued Oct. 15, 1981.

Filed Dec. 10, 1982.

Marshall J. Conn, Pittsburgh, for Ernest Renda, appellant (at No. 194) and appellee (at No. 225).

Donald J. Snyder, Greensburg, for Reliance Universal, appellant (at No. 225) and appellee (at No. 194).

Before WIEAND, JOHNSON and MONTEMURO, JJ.

WIEAND, Judge:

The action in assumpsit which spawned the cross appeals presently before this Court was brought by Reliance Universal, Inc. of Ohio ("Reliance") to recover amounts due for materials supplied to Ernest Renda Contracting Company, Inc. ("Renda") in the course of a sewer construction project in Hempfield Township, Westmoreland County. Named as defendant in addition to Renda was Safeco Insurance Com-

pany of America ("Safeco"), the corporate surety on the labor and material bond supplied by Renda to Hempfield Township Municipal Authority. A jury found that Renda had failed to pay $91,382.85 for materials purchased. It also made a special finding that Renda had agreed to pay and was liable to Reliance for a service charge of 1½ per cent per month. The trial court computed this amount and molded the verdict against Renda in the total amount of $116,921. Although observing that Safeco was not liable for the same service charge, the trial court nevertheless added interest at the rate of ten (10%) per cent per year and molded the verdict against Safeco to be $105,535.19. Post-trial motions were denied, judgments were entered on the molded verdicts, and all parties appealed. We conclude that the assessment of interest against Safeco at the rate of ten (10%) per cent per annum was unauthorized and erroneous. Other averments of trial error, however, have been decided correctly by the court en banc and have been fully considered in the comprehensive opinion of The Honorable Gilfert M. Mihalich. These alleged errors are:

(1) That the court erred by allowing the jury to consider as an admission a statement in Renda's pleading that it had sent to Reliance a letter and check for $81,-304.75 as "full payment for all materials supplied to the project;"

(2) That the court erred by refusing to allow the defendants to amend their counterclaim during the surrebuttal stage of the trial;

(3) That the court erred by refusing to permit Frank Renda, a defense witness, to express an expert opinion regarding the cause of leaks in the pipes and by refusing to permit testimony of the cost of repairing such leaks;

(4) That the court abused its discretion by allowing allegedly prejudicial comments during closing argument by Reliance's counsel;

(5) That the court erred when it failed to give immediate curative instructions following the closing remarks of Reliance's counsel.

The trial court interpreted Paragraph 19 of Renda's New Matter as a partial admission of liability. Paragraph 19 states:

19. Together with a letter dated June 19, 1978, defendant Renda mailed a check to Mr. R.R. Gedrock of Reliance in the total amount of $81,304.75 as full payment for all materials supplied to the project in the above captioned case. (T. 73, 74)

This averment, as the lower court observed, "makes no attempt to state, as counsel for Defendants has suggested in his Brief, that the letter dated June 19, 1978 was an offer of compromise or settlement. Defendant recites a statement of liability admitted in the amount of $81,304.75."

The law in Pennsylvania generally excludes evidence of offers of compromise. However, offers of compromise are to be distinguished from admissions of fact, which, of course, may be received as competent evidence. *Gogel v. Blazofsky,* 187 Pa.Super. 32, 142 A.2d 313 (1958), citing *Woldow v. Dever,* 374 Pa. 370, 97 A.2d 777 (1953) and *Liebster v. Lucas,* 82 Pa.Super. 184 (1923). The trial court could properly treat Renda's check as an admission that it owed Reliance for materials sold and delivered in the amount of $81,304.75.

Renda's motion to amend its counterclaim was made after two weeks of trial and during surrebuttal. The trial court found that the untimeliness of the request to amend would, if allowed, substantially prejudice Reliance. We find no error in this ruling.

Allowance of an amendment to pleadings is a matter of judicial discretion. Amendments, although to be liberally permitted, may properly be refused where surprise or prejudice to the other party will result. *Berman v. Herrick,* 424 Pa. 490, 227 A.2d 840 (1967); *Posternack v. American Casualty Company of Reading,* 421 Pa. 21, 218 A.2d 350

(1966). In a similar case, *West Penn Power Company v. Bethlehem Steel Corporation*, 236 Pa.Super. 413, 348 A.2d 144 (1975), the plaintiff had made a motion to amend its pleading on the last day of an eight-week trial in order to add three alternative bases of a contract. The trial court denied the motion, and the Superior Court affirmed, stating:

> As appellants correctly note, the general rule is that amendments to a pleading are to be liberally allowed and may be made at any point in the litigation. Pa.R.Civ.P. 1033, 12 P.S. However, the decision whether to allow an amendment is a matter of judicial discretion, and a motion to amend is properly denied when the moving party would gain an inequitable advantage....

> To permit a plaintiff to change its claim at the very end of the case may be unjust. The defendant will necessarily have conducted its case in response to the claim as presented; had the defendant known that a change in the claim would be permitted, it might have conducted its cross-examination of the plaintiff's witnesses in an entirely different manner. To be sure, this will not always be so; much will depend on the particular circumstances. Here, had the judge been sitting without a jury, perhaps he would have been willing to allow the amendment, and, so to speak, recast the case and start all over in order to decide whether the steel had been delivered within a reasonable time. *However, the judge was sitting with a jury. Considering all of the circumstances, we conclude that it was within his discretion to decide that in offering their amendments, appellants had waited too long.* (Emphasis added.)

*Id.*, 236 Pa.Superior Ct. at 433–34, 348 A.2d at 155–56.

■ It is well-settled law in Pennsylvania that an expert may not express his opinion upon facts which are not warranted in the record, regardless of the expert's skill and experience. *Collins v. Hand*, 431 Pa. 378, 246 A.2d 398 (1968); *DeFrank v. Sullivan Trail Coal Co.*, 425 Pa. 512, 229 A.2d 899 (1967); *Gordon v. State Farm Life Insurance Co.*, 415 Pa. 256, 260, 203 A.2d 320, 322 (1964); *Murray v.*

*Siegal,* 413 Pa. 23, 195 A.2d 790 (1963); *Smail v. Flock,* 407 Pa. 148, 180 A.2d 59 (1962); *Donaldson v. Maffucci,* 397 Pa. 548, 558, 156 A.2d 835, 840 (1959); *Karavas v. Poulos,* 381 Pa. 358, 365, 113 A.2d 300, 304 (1955); *Roberts v. Pitt Publishing Co.,* 330 Pa. 44, 51, 198 A. 668, 671 (1938). In *Smail v. Flock, supra,* the Supreme Court affirmed a trial court's decision to exclude an expert's opinion that the cause of an automobile-truck accident was a broken spindle on the truck which, if it occurred while or before the truck went around a turn, would explain why the vehicle turned over, saying:

> The offer carried so many conjectures, speculations and hypotheses that any conclusion based on the answers would have been entirely extraneous to the law of cause and effect. In the first place, it was not asserted that the broken spindle, if there was one, accounted for the overturning of the truck, nor even that the spindle was broken before the tractor-trailer entered into the curve. The offer did not exclude the possibility that the spindle snapped because of the intolerable strain placed upon it as the result of the centrifugal force generated as the truck hurled itself into the turn at a high rate of speed. Nor did it exclude the possibility that the spindle may have broken when the truck was righted after the accident, or when it was taken off the highway....
>
> Moreover, expert testimony, to have any evidentiary value, must state with some positiveness that a given state of affairs is the result of a given cause. It is not enough to say that something *could* have happened. Anybody can guess. Expert testimony must assert that it is the professional opinion of the witness that the result in question came from the cause alleged.
>
> *Id.,* 407 Pa. at 152, 180 A.2d at 61.

In *Murray v. Siegal, supra,* where plaintiff had called a civil engineer to show that the inner wall of a catch basin was in a rotten and deteriorated condition which permitted water to seep through it, thereby causing the collapse of an

adjacent sidewall and the injuries to the plaintiff, the Supreme Court stated:

> While hypothetical questions may be based on an assumed statement of facts, they may not be based on matters which do not appear in the record, or on facts not warranted by the evidence: *Keilbach v. Met. Life Ins. Co.*, 157 Pa.Superior Ct. 590, 43 A.2d 652 (1945); *Zeigler v. Simplex Found. Co.*, 228 Pa. 64, 77 Atl. 239 (1910). Further, an expert may not express an opinion which is based on guess or conjecture: *First Meth. Ch. v. Bangor Gas Co.*, 388 Pa. 115, 130 A.2d 517 (1957).

*Id.*, 413 Pa. at 30, 195 A.2d at 794.

 A trial court is vested with substantial discretion in receiving or refusing expert testimony. In the instant case, based upon all the testimony and all the surrounding circumstances relating to the proffered testimony, the trial court did not abuse its discretion by excluding the opinion testimony of Frank Renda. Although he would have expressed an opinion regarding the reason for and cost of correcting leaking in the system, the evidence failed to show (1) the existence of cracks or leaks in the pipe prior to installation, or (2) that water had entered the system through cracks in the pipe. The presence of myriad causes for the presence of water, including leaks in manholes not supplied by the plaintiff and inflow from manhole covers, rendered his opinion testimony speculative and without adequate foundation. Had the defendants offered direct testimony that water was entering the system through cracks in the pipe, it would then have been proper for Frank Renda to express an opinion as to whether or not the presence or lack of steel in the spigot end of the pipe would have caused leakage. Renda failed to do so, and the trial judge correctly sustained an objection to opinion testimony when the requisite facts were not in evidence.

 The lower court considered at length those portions of trial counsel's closing argument which Renda and Safeco found objectionable. We find it unnecessary to recite them

at length herein. Suffice it to say that we find no error in the rulings of the trial judge.

"Whether a lawyer's speech transgresses the bounds of legitimate argument ... is primarily a matter for the trial judge to decide because he is present and can note not only the structure of the argument but the manner in which it is projected to the jury." *Purcell v. Westinghouse Broadcasting Co.*, 411 Pa. 167, 184–85, 191 A.2d 662, 671 (1963). The trial court held that the arguments of Reliance's counsel were within the bounds of legitimate advocacy, and we perceive no basis for holding otherwise. "A trial in an American court is distinctly an adversary proceeding and is therefore bound at times to excite counsel into making statements overladen with partiality. However, so long as decorum is maintained, and there is no leaving the highway of fact to agitate in the marshes of palpable exaggeration, unwonted characterizations, hortatory appeals to latent prejudices, and improper imputations of gross motives, there is no reason why lawyers should not be permitted to express themselves in such manner as they believe best serves the interests of justice. The responsibility is on the trial judge to see that counsel do not transgress the bounds of what is proper, wholesome, and fair." *Rondinelli v. Pittsburgh*, 407 Pa. 89, 94–95, 180 A.2d 74, 77–78 (1962).

The court's imposition of a 10% charge against Safeco was not supported by any established rule of law. The jury found, and the trial court agreed, that Safeco was not liable for the 1½% per month service charge contained in the contract between Renda and Reliance. Nevertheless, the court determined that, by analogy to Pa.R.C.P. 238, it was authorized to assess a penalty against Safeco because it had failed to make prompt payment of an amount admitted by Renda's pleading to be due. Thus, the court held:

> ... Safeco has been paid a premium for undertaking its suretyship obligations. In its bond, it specifically calls for the "prompt" payment of claims by all lawful claimants. [Renda] admitted liability in its pleadings for the amount of $81,304.75. Had Safeco paid this amount, it

certainly would have had recourse against [Renda] for indemnification. [Reliance] could have had the use of its money rather than same being retained in the hands of Safeco.

▮▮▮ This was improper. Delay damages under Rule 238 may be awarded only in actions for bodily injury, death, or property damage. The rule was promulgated to ease "congestion and delay in the disposition of civil actions for bodily injury, death or property damages pending in the trial courts." Explanatory note of Civil Procedural Rules Committee, 8 Pa.Bulletin 2668 (1978). See also: *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 436 A.2d 147 (1981), *appeal dismissed sub nom. Bucheit v. Laudenberger*, 456 U.S. 940, 102 S.Ct. 2002, 72 L.Ed.2d 462 (1982); Goodrich-Amram 2d § 238:1. The rule permits a court to impose a 10% penalty for delay from the date of complaint to the date of verdict. Pa.R.C.P. 238(a)(1), (2). The penalty may only be imposed, however, in tort cases. The rule makes no provision for recovery of delay damages in contract cases. Indeed, the law is clear that punitive damages are not recoverable in contract actions. See: *Daniel Adams Associates, Inc. v. Rimbach Publishing, Inc.*, 287 Pa.Super. 74, 429 A.2d 726 (1981); *DeLuca v. Fidelity Bank*, 282 Pa.Super. 365, 422 A.2d 1159 (1980); *Gurnick v. Government Employees Insurance Co.*, 278 Pa.Super. 437, 420 A.2d 620 (1980), *overruled on other grounds, Toll v. Toll*, 293 Pa.Super. 549, 439 A.2d 712 (1981). See also: 22 Am.Jur.2d Damages § 245. That the 10% interest imposed against Safeco by the trial court was intended as a punitive measure is clear from its explanation.

Reliance contends, however, that Safeco should be liable for the service charge which Renda agreed to pay as a part of its contract for the purchase of materials. Therefore, we consider next whether a surety which executes a labor and material payment bond can be held liable for service charges which its principal has contracted to pay?

Reliance and Renda entered into a contract for the sale of various sizes of pipes. The contract was on a form, provided by Reliance, which . contained the following notice:

A service charge of 1½% per month (18% per year) will be made a part of all past due accounts. Service charges will be added to unpaid accounts at the end of the month following the payment due date. To avoid this additional cost, please pay your bills in keeping with our terms.

The labor and material payment bond, with Safeco as surety, was executed subsequently. Because Renda was constructing a municipal sewer project, the bond was required by the Public Works Contractors' Bond Law of 1967, December 20, P.L. 869, §§ 1–12, 8 P.S. §§ 191–202. The statute required and the executed bond obligated Safeco to make payments to claimants "for all labor and material used or reasonably required for use in the performance of the contract," if Renda failed to make prompt payments. A bond under this statute is intended "solely for the protection of claimants supplying labor or materials to the prime contractor to whom the contract was awarded ... in the prosecution of the work provided for in such contract, and shall be conditioned for the project payment of all such material furnished or labor supplied or performed in the prosecution of the work." 8 P.S. § 193(a)(2). Are "service charges" a part of the cost of "labor and materials used in the prosecution of the work"?

 Reliance argues that the surety's obligation must be defined in terms of the contract between its principal and the supplier, so that the surety is responsible for all charges arising from the contract. It contends that if the surety had desired to limit its obligations under the bond, it could have done so. We disagree with this analysis. When a bond is executed, it is the language of the bond that is determinative of the surety's obligation and not the agreement between the municipal contractor and his materialman. This is particularly true where, as here, the bond is statutorily required, and the bond's terms are framed in the language of the statute. Safeco did not agree to obliga-

tions beyond the requirements of the statute; the obligations to which it agreed are specifically stated in and limited by the bond and are those required by the statute.

In *Lite-Air Products, Inc. v. Fidelity & Deposit Co. of Maryland,* 437 F.Supp. 801 (E.D.Pa.1977), the plaintiff sought to recover finance charges from a surety under a labor and material payment bond. As in the instant case, the surety's obligations depended upon the language of the bond and the interpretation of "labor and materials." The court concluded:

> [Finance charges are not] a properly included item under "labor and materials." First this claim is not an indispensable cost for labor or materials which added value to the building project. Rather, the claim for finance charges is in the nature of a penalty, and therefore would more appropriately be classified as damages than as part of the value of the materials. In addition, there is no language in the bond from which the court could find that the parties intended the surety to be liable for this charge.

*Id.* at 804.

One year later, *Can-Tex Industries v. Safeco Insurance Company of America,* 460 F.Supp. 1022 (W.D.Pa.1978) was decided. The case involved a factual situation similar to the instant case and, ironically, involved Renda and Safeco as principal and surety. The plaintiff in that case argued that the surety was obligated to pay finance charges and attorneys' fees in addition to the principal amount due. Rejecting this contention, the court wrote:

> It is of course true that a surety can be bound only to the extent and in the manner and under the circumstances set forth in his agreement. See *Peter J. Mascaro v. Milonas,* 401 Pa. 632, 166 A.2d 15 (1960); *Nazareth Foundry and Machine Co. v. Marshall Machinery and Supply,* 258 Pa. 558, 102 A. 268 (1917); *New Holland Dairies, Inc. v. Regent Dairy Products Corp.,* 115 Pa.Super. 87, 174 A. 664 (1934). The Bond in this case was executed in conformity with the requirements of state

law and for the payment of all money "due any claimant" supplying labor and materials on a public works project. The Surety Bond could not be extended by language in a subcontract under which the general contractor agreed to be liable for finance charges and attorney's fees upon default. The law cannot impute an intent to cover such additions beyond the statutory requirements of the Payment Bond without express inclusion in the Bonding Agreement. No such language appears in the Agreement presently before this Court.

*Id.* at 1025.

We agree with these federal court decisions that service/finance charges are not covered by the instant bond or required by the Public Works Contractors' Act. The wording of the statute is narrow, and bonds drafted pursuant thereto may be equally narrow. Safeco was paid a premium to guarantee payment for costs of "labor and materials used or reasonably required for use in the performance of the contract." It did not obligate itself for all claims that might be made against Renda, but only for costs of labor and materials. Compare: *Kuhn v. Torr Construction Co., Inc.*, 64 D. & C.2d 332 (Cambria 1974) (plaintiff sued for rental fee for tractor and for damages caused by contractor; held, machine rental is included under cost of labor and materials under statute, but damage to machine is not; surety liable for rent but not for repair costs). Compare also: *Price Brothers Co. v. Charles J. Rogers Construction Co.*, 104 Mich.App. 369, 304 N.W.2d 584 (1981) (surety liable for service charge where bond obligated it to pay "all indebtedness"); *Price Brothers Co. v. Olin Construction Co., Inc.*, 528 F.Supp. 716 (W.D.N.Y.1981) (surety obligated to pay service charge where bond required payment for "all lawful claims").

For the foregoing reasons, we conclude that only Renda was liable for the 18% service charge. We also conclude that the trial court erred in imposing a 10% interest charge against Safeco as a penalty for failure to make prompt

payment. All other issues, however, have been correctly decided by the trial court.

The judgment against Renda is affirmed; the judgment against Safeco is vacated, and the case is remanded for the recomputation of interest at a rate of 6% per annum on the unpaid balance due for labor and materials.