580 A.2d 853

**SALVINO STEEL & IRON WORKS, INC., Appellant,**

**v.**

**FLETCHER & SONS, INC. and Fireman's Fund Insurance Co., The American Insurance Co.**

Superior Court of Pennsylvania.

Argued June 20, 1990.

Filed Sept. 27, 1990.

Neil Hilkert, Lansdale, for appellant.

Roy S. Cohen, Philadelphia, for appellees.

Before ROWLEY, McEWEN and JOHNSON, JJ.

JOHNSON, Judge:

Appellant Salvino Steel and Ironworks, Inc., (Salvino), subcontractor for a project renovating the dental facility at Temple University in Philadelphia, Pennsylvania, appeals the order granting summary judgment to appellee American Insurance Company (American), issuer of the surety bond required for public construction by the Public Works Contractors' Bond Law of 1967, December 20, P.L. 869, §§ 1–12, codified at 8 P.S. § 191–202. We affirm.

American, through its parent company, Fireman's Fund Insurance Company, issued a surety bond to the original general contractor, Fletcher & Sons, Inc., as statutorily required for public works under 8 P.S. § 193. The bond provided that:

> The principal and Surety hereby jointly and severally agree with the obligee herein that every person, copartnership, association or corporation who, whether as Subcontractor or as a person otherwise entitled to the benefits of this Bond, has furnished material or supplied or performed labor or rented equipment used in the prosecution of the work as above provided ... and who has not been paid in full therefor, may sue in assumpsit on this Bond ... and prosecute the same to final judgment....

Performance Bond, January 23, 1987. Fletcher voluntarily defaulted on the contract on June 4, 1987. Therefore American, as surety, negotiated a new contract with Keating Construction Company on August 21, 1987. Keating subcontracted with Salvino to perform essentially the same work agreed to in the earlier contract with Fletcher. Keating purchased from Salvino all the steel it produced for the construction under the original subcontract with Fletcher. However, the delay occasioned by Fletcher's default caused

Salvino to incur costs of storing the steel and renting trailers upon which to store it for the period between June 1, 1987 and September 26, 1987.

Salvino brought this action against Fletcher, Fireman's and American solely to recover the costs incurred during the period between contracts. American moved for summary judgment on the basis that, as surety, it is not liable for such costs but only for the anticipated and bargained-for costs. Salvino argued that the costs incurred as a result of the delay were contemplated under the contract. In the alternative, Salvino argued that American was liable for the sum under a quasi-contract theory. The trial court, interpreting the surety bond, concluded that it did not encompass costs caused by delay and that Salvino did not present facts establishing a basis for recovery under a quasi-contract theory. The court thus granted American's motion for summary judgment on October 30, 1989. The other defendants, including Fletcher, remain in the action. This appeal follows.

On appeal Salvino argues that, contrary to the trial court's interpretation of the surety bond, the bond actually contemplates payment for costs incurred as a result of the delay. Salvino also argues that American is liable for the cost of that storage under a quasi-contract theory. Both claims fail.

The entry of summary judgment will not be reversed on appeal unless there has been an error of law or a clear abuse of discretion. *O'Neill v. Checker Motors Corporation*, 389 Pa.Super. 430, 567 A.2d 680 (1989). Examining the record in the light most favorable to the non-moving party, a court may properly grant a summary judgment motion where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law. Pa.R.C.P. 1035(b); *McDonald v. Marriott Corporation*, 388 Pa.Super. 121, 564 A.2d 1296 (1989).

 The first question before us is whether the bond covered the damages sought by Salvino. For this analysis, the bond is the proper place to start because the true intent and meaning of the instrument are the primary determinants of the extent of liability. *Lite–Air Products, Inc. v. Fidelity & Deposit Company of Maryland,* 437 F.Supp. 801 (E.D.Pa.1977), *citing Monongahela Street Railway Co. v. Philadelphia Co.,* 350 Pa. 603, 39 A.2d 909 (1944). In order to determine the scope of the bond, we must look to both the language of the bond itself and to the statute with which it was executed to conform. *Reliance Universal, Inc. of Ohio v. Ernest Renda Contracting Company, Inc.,* 308 Pa.Super. 98, 454 A.2d 39 (1982). It is the language of the bond that is determinative of the surety's obligation and not the underlying agreement between the municipal contractor and his materialman. *Id.*

 The bond provides that the surety guarantees payment to those who have "furnished material or supplied or performed labor or rented equipment used in the prosecution of the work as above provided." The bond does not contain a clause referring to responsibility for costs resulting from delay. Further, the language in the bond, as the trial court noted, substantially tracks the statutory language of 8 P.S. § 193. Where the bond is statutorily required and the bond's terms are framed in the language of the statute, the obligations to which the surety agreed are specifically stated in and limited by the bond and are those obligations required by the statute. *Reliance, supra.* Because the language in the bond tracks the language of the statute, the cases interpreting requirements under the statute determine the scope of liability under the bond at issue. *Lite–Air, supra.*

 Salvino does not claim that the bond expressly provides for costs incurred as a result of delay. Rather, it claims that the bond/statutory language should be interpreted to include costs resulting from delay as being contemplated contract costs. The law is otherwise. In *Lite–Air Products* the Federal District Court applied Pennsylva-

nia law to the precise issue before us, whether the statutory/bond language reciting liability for amount due for labor and materials included damages resulting from a breach of contract by the principal contractor. The court decided that delay damages are not an indispensable cost, and as long as there is no intention specified in the bond, the surety is not liable for the damages caused by the principal. *Lite–Air Products*, 437 F.Supp. at 804. The *Lite–Air Products* court concluded that because there was no evidence of any intention to hold the surety liable for such damages, the bond did not guarantee these costs.

In *Reliance, supra*, this Court adopted and applied the *Lite–Air Products* rationale. The issue before the court was whether service and financing charges are covered by the bond mandated by 8 P.S. § 193. Emphasizing that the wording of the statute is narrow and that bonds drafted pursuant to the statute may be equally narrow, the court decided that the surety did not obligate itself to pay financing and service charges when it agreed to guarantee payment for "labor and materials used or reasonably required for use in the performance of the contract." *Reliance*, 308 Pa.Super. at 110, 454 A.2d at 45. We now apply these principles to the case before us and conclude that because the bond is unambiguous and does not include a delay specification, American as surety is not liable for damages caused by delay.

We also reject Salvino's argument in the alternative that it is entitled to payment from American under a quasi-contract theory. A quasi-contract, also referred to as a contract implied in law, imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement when one party receives an unjust enrichment at the expense of another. *Birchwood Lakes Community Ass'n v. Comis*, 296 Pa.Super. 77, 86, 442 A.2d 304, 308 (1982). Having failed to prove a cause of action under a breach of contract theory, a party may not then attempt to prove the case in quasi-contract, unless the complaint originally, or as amended, sets forth facts sup-

porting a cause of action in quasi-contract. *Id.* Salvino's complaint alleges solely a claim for breach of contract. It pleads none of the facts in support of its alleged quasi-contract theory as presented to this Court, that the steel fabricated for the project would not have survived the delay period had it not been stored, and thus Salvino saved American the cost of paying for entirely new fabrication of the steel.

Even if the complaint had been properly pled, the evidence before the court does not support Salvino's claim that American was unjustly enriched by Salvino's actions. In order to prove unjust enrichment, the plaintiff must show that the defendant wrongfully secured or passively received a benefit that would be unconscionable for it to retain. *Roman Mosaic and Tile Co., Inc. v. Vollrath,* 226 Pa.Super. 215, 313 A.2d 305 (1973). As the trial court found, Salvino unilaterally made the decision, without inducement, to begin storing the steel offsite. The alleged inducement, a letter dated July 30, 1987, was sent two months after Salvino began to incur storage costs and cannot be interpreted as a directive to continue storage. The letter simply urged the on-site contractors to continue their work. It in fact put Salvino on notice that payment for any materials could not be promised. We agree with the trial court that none of this amounts to wrongfully securing or passively receiving a benefit that would be unconscionable for American to retain.

For all the foregoing reasons, we affirm the order granting summary judgment to American and dismissing it from the case.

Order affirmed.