**NORTH AMERICAN SPECIALTY INSURANCE COMPANY,**
Plaintiff

v.

**CHICHESTER SCHOOL DISTRICT,**
Defendant

No. CIV. A. 99–2394.

United States District Court,
E.D. Pennsylvania.

May 8, 2001.

R. James Reynolds, Jr., Thomas Thomas Armstrong & Niesen, Harrisburg, PA, for North American Specialty Insurance Company, Plaintiffs.

Terry Elizabeth Silva, Silva, Miller and Associates, Kenneth J. Benton, Silva & Associates, Philadelphia, PA, for Chichester School District, Defendants.

*MEMORANDUM AND ORDER*

SMITH, United States Magistrate Judge.

On February 9, 2001, following a bench trial in the above-referenced action, this Court entered judgment against Defendant and Counterclaim–Plaintiff Chichester School District (the "School District"), in the amount of $407,801.44, and against Plaintiff and Counterclaim–Defendant North American Specialty Insurance Company ("NAS"), in the amount of $166,524.63. For judicial economy purposes, the Court bifurcated the School District's claim for attorneys' fees against NAS, and requested that both parties separately brief the issue. Having now considered both parties' post-trial submissions on this issue, we find that the School District is entitled to an award of attorneys' fees in an amount to be determined at a future evidentiary hearing.

I. FACTUAL AND PROCEDURAL BACKGROUND

Although the Court has already provided an extensive factual backdrop behind this litigation in the Findings of Fact and Conclusions of Law, an abridged version of the certain crucial events provides a useful framework for the issues presently before

us. This dispute arose out of defendant Chichester School District's efforts to construct a new elementary school in Linwood Pennsylvania, 19601 (the "Linwood School"). According to the facts as found by this Court, the School District entered into a Construction Contract, on May 15, 1997, with Craft–Century Construction, Inc. ("Craft–Century") for the general construction work on the new school. In connection with that agreement, plaintiff North American Speciality Insurance Company, as surety for Craft–Century, issued a Payment Bond and a Performance Bond in favor of the School District, as owner. By way of reference, the Performance Bond incorporated the terms of the Construction Contract.

Following several notices by the School District to both NAS and Craft–Century regarding Craft–Century's defaulted performance, the School District ultimately terminated the Contract by way of letter dated August 11, 1998. The letter requested immediate direction from NAS regarding the method by which the General Construction Contract for the New Linwood Elementary School would be fulfilled. In response, counsel for NAS, by letter dated August 18, 1998, indicated NAS's election to proceed under paragraph 4.2 of the Performance Bond, which provided that the surety may undertake to perform and complete the construction contract itself, through its agents, or through independent contractors. The letter further noted that NAS's election was subject to the School District and NAS entering into a Takeover Agreement, a proposed version of which NAS enclosed. The School District, however, declined to execute the Agreement as proposed by NAS.

Despite the School District's refusal to sign the Takeover Agreement, NAS retained York Hunter, Inc. to complete the work under the Craft–Century Contract.

NAS then provided funds, under the Performance Bond, to York Hunter, as well as to subcontractors, laborers, materialmen and consultants, in the amount of $375,365.90. In addition, it made payments totaling $896,856.73 under the Payment Bond to subcontractors, laborers and materialmen of Craft–Century.

Notwithstanding numerous problems along the way, the project proceeded and was ultimately finished. Although the contractual date of substantial completion was set for July 28, 1998, the actual substantial completion date was not reached until September 7, 1998. On September 8, 1998, the new school opened, however, the School District complained that it was in deplorable condition and facilities were inadequate for the elementary school children. NAS, in turn, argued that it had properly performed its obligations and was thus entitled to appropriate compensation.

On May 10, 1999, with no resolution to the outstanding issues in sight, NAS commenced this action against the School District to recover various sums of money under the Contract. The School District responded to the Complaint on July 20, 1999, by way of Answer, Affirmative Defenses and Counterclaim, seeking, in part, damages for breach of contract arising from the default of Craft–Century, including delay costs, incomplete work and/or damaged or improperly performed work and attorneys fees. Following a non-jury trial, this Court entered judgment on NAS's complaint in the amount of $407,801.44, and on the School District's counterclaim in the amount of $166,524.63. We bifurcated the School District's claim for attorneys' fees, to which we now turn.

## II. DISCUSSION

The School District advances two theories for recovery of attorneys' fees in this matter. First, it claims that, pursuant to

the underlying Contract between School District and Craft–Century Construction Company ("Craft–Century"), which is incorporated by reference into the Performance Bond, NAS is liable to the School District for attorneys' fees. Second, it asserts that the Performance Bond itself provides for the School District to recover attorneys' fees from NAS. The Court addresses each argument in turn.

A. *Attorneys' Fees Under the Craft–Century/School District Contract.*

The School District's first argument focuses on the language of its Contract with Craft–Century. It begins with the premise that, pursuant to the General and Supplementary Conditions, Craft–Century bore responsibility for replacement of defective or nonconforming work. Paragraph 12.2 of those conditions addresses the contractor's obligation to correct such work and lists attorneys' fees among the recoverable expenses for a contractor who fails to meet such obligations. The School District then notes that paragraph 1 of NAS's Performance Bond incorporates the Craft–Century Contract, thereby imposing the same degree of liability on NAS as borne by the School District. Relying on these various provisions, it goes on to conclude that NAS is accountable for attorneys' fees incurred in the correction of nonconforming or defective work.

■ While, at first blush, this argument appears to follow a logical progression, closer examination of both the Contract language and the prevailing jurisprudence reveals that it is flawed. Under Pennsylvania law, "the liability of a surety is coextensive with that of the principal, and accordingly, a surety is bound to perform whatever may be legally required of its principal." *Diversified Utilities Sales, Inc. v. Monte Fusco Excavating Contracting Co.,* 71 F.R.D.

661, 664 (E.D.Pa.1976). However, it is equally well-established that a surety can be bound only to the extent and in the manner and under the circumstances set forth in his bond, and that he assumes no liability beyond those set forth in the suretyship agreement. *See Tudor Development Group, Inc. v. U.S. Fidelity and Guar. Co.,* 692 F.Supp. 461, 463 (M.D.Pa.1988); *Peter J. Mascaro v. Milonas,* 401 Pa. 632, 166 A.2d 15, 17 (1960); *Nazareth Foundry and Machine Co. v. Marshall Machinery and Supply,* 258 Pa. 558, 102 A. 268, 270 (1917); *Downingtown Area Sch. Dist. v. International Fidelity Ins. Co.,* 769 A.2d 560 (Pa.Commw.Ct. 2001). Indeed, when determining whether a surety is liable for certain types of damages, the bond is the proper place to start because the true intent and meaning of the bond instrument, not the underlying contractor agreement, are the primary determinants of the extent of liability. *Salvino Steel & Iron Works, Inc. v. Fletcher & Sons, Inc.,* 398 Pa.Super. 86, 580 A.2d 853, 856 (1990), *appeal granted,* 527 Pa. 625, 592 A.2d 45(Pa.), *appeal dismissed as improvidently granted,* 529 Pa. 62, 601 A.2d 806 (1992).

■ Paragraph 6 of the Performance Bond, in the case at bar, specifically enumerates the damages that may be recovered from the surety to that contractor, as follows:

> To the limit of the amount of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:
>
> 6.1 The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

6.2 Additional .legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

6.3 Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

Under this language, the surety's liability is strictly limited to the identified damages. As such, although the performance obligations of Craft–Century Contract are imposed upon the surety by way paragraph 1 of the Performance Bond, which incorporates the Contract, the remedies to which the School District is entitled for breach of those obligations are restricted by the Bond itself. The School District can thus only recover from NAS as set forth under paragraph 6 of the Performance Bond, thereby making the underlying Contract language irrelevant for purposes of this issue.

In response to this fundamental proposition of surety law, the School District relies on the case of *Downingtown Area School District v. International Fidelity Ins. Co.*, 671 A.2d 782 (Pa. Commw.Ct.1996), to argue that NAS, as surety for Craft–Century, became liable for all damages set forth in the Craft–Century Contract. The Performance Bond in that case required that the surety, "pay the cost of completion less the balance of the contract price; but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount [for Contract completion under its terms and conditions]." *Id.* at 784. The surety argued that, pursuant to this language, it was responsible only for the cost of completion, not the owner's claimed

delay damages and attorney's fees. *Id.* Upon examination of these terms, however, the court declined summary judgment for the surety on those damages and found that the "other costs and damages" language of the bond may permit the award of attorneys' fees, as set forth in the underlying construction contract. *Id.* at 786.

The School District in the current matter now argues that, under the reasoning of the *Downingtown* case, NAS should also be responsible for attorneys' fees as provided for in the Craft–Century Contract. Its reliance on this case, however, is misplaced. First, the court in *Downingtown* did not find, as the School District claims, that the surety was liable for attorneys' fees because the underlying contract had a provision for recovery of consequential damages, including attorneys' fees. Rather, it denied the surety's request for summary judgment on the issue of attorney fees liability because a provision *in the bond itself*, although not specifically enumerating attorneys' fees as a recoverable expense, could be sufficiently broad to extend the surety's obligation to costs covered in the underlying contract. *Id.* at 786. Indeed, the court specifically recognized that only the language of the performance bond could define the scope of the surety's liability, but declined to fully interpret that language during summary judgment proceedings. *Id.* at 788

Moreover, in a more recent opinion in that case, the Pennsylvania Commonwealth Court clarified that whether the surety was liable for delay damages and attorneys' fees depended, not on the underlying contract, but rather on the language of the bond itself. Following a closer examination of the bond language, it ultimately ruled that although the underlying contract allowed for an award of consequential damages including attorneys fees, the bond did not specifically obligate the

surety for these damages, thereby relieving it of liability for them. *Downingtown Area Sch. Dist. v. International Fidelity Ins. Co., Inc.*, 769 A.2d 560 (Pa.Cmwlth. 2001). In so ruling, the court reinforced the proposition that the scope of a surety's liability is strictly governed by the bond language.

As noted above, NAS's liability under the Performance Bond is set forth under paragraph 6. Consequently, the mere fact that the Craft–Century Contract mentions attorneys' fees does not automatically impose the same responsibility upon NAS.[1] While the incorporated Craft–Century Contract establishes the conditions of NAS's liability, it cannot extend that liability beyond the agreed-upon provisions of the Performance Bond. As such, the Court declines to award attorneys' fees on the basis of this first argument.

B. *Attorneys' Fees Under the Performance Bond*

The School District fares somewhat better under its second argument. It claims that, even limiting NAS's duties to those enumerated under the Performance Bond, paragraph 6 of that bond specifically obligates NAS to reimburse the School District for legal costs. Considering this issue in light of the contractual language, together with the prevailing jurisprudence the Court finds that the School District may recover its legal costs.

 Pennsylvania law precludes recovery for counsel fees from the adverse party to a cause in the absence of express statutory allowance, clear agreement by the parties, or some other established exception. *Chatham Communications, Inc. v. General Press Corp.*, 463 Pa. 292, 344 A.2d 837, 842 (1975) (citations omitted). Although no express statutory allowance or established exception exists in this case, there is, in fact, a "clear agreement by the parties." Paragraph 6 of the Performance Bond between the parties sets forth the full extent of the surety's liabilities in the event of a defaulting contractor. Paragraph 6.2 goes on to specify that:

> To the limit of the amount of this Bond, but subject to the commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:
>
> . . .
>
> 6.2 Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4 . . .

As we noted above, the extent of a surety's liability is determined by reference to the bond language itself. Thus, the Bond unequivocally makes NAS liable for "legal costs" resulting from Craft–Century's default and resulting from the actions or failure to act of the Surety under Paragraph 4. *See Department of Transp. v. Manor Mines, Inc.*, 117 Pa.Cmwlth. 342, 544 A.2d 538, 543–544 (1988), *aff'd*, 523 Pa. 112, 565 A.2d 428 (1989) (imposing attorneys' fees on a surety where provided for by the performance bond).

---

1. Notably, the Craft–Century Contract language is not entirely clear as to when the School District would be able to collect attorneys' fees. Paragraph 12.2.4, the only contractual provision relied upon by the School District which mentions attorneys' fees, appears to address the situation wherein Craft–Century fails to correct nonconforming work, the School District removes and stores certain salvable materials of Craft–Century, and the School District then sells those materials and incurs attorneys and accountants fees in connection. As this factual scenario is not present in this case, paragraph 12.2.4 seems to be inapplicable.

NAS responds to this conclusion with two arguments. NAS's first argument turns on the language of paragraph 6 of the Performance Bond, which states that NAS is liable for certain damages "subject to the commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract." NAS contends that because the School District failed to commit the Contract Balance to mitigation of costs and damages on the Contract between Craft–Century and the School District pursuant to this provision, it is not obligated to the School District for *any* damages, including attorneys' fees, under the Performance Bond.

The Court has twice before addressed this identical argument—once during summary judgment proceedings and once in our Findings of Fact and Conclusions of Law—and on both occasions we have rejected it. To briefly reiterate our explanation, paragraph 6 only requires that the School District commit the balance of the Contract Price to "mitigation of costs and damages on the Construct Contract," not to NAS. The evidence adduced at trial establishes that it did exactly that by expending the Contract Balance towards cleaning, fixing defective Craft–Century work and other completion costs. Indeed, the current Director of Business Affairs for the School District testified that of the remaining Contract Balance, some was actually paid out and some was put into escrow for future repairs. As the Court has, thus, made a factual finding that the School District satisfied this provision, we must reject NAS's claim.

NAS's second argument asserts that, under the language of paragraph 6, the School District is only entitled to damages arising from *both* the Contractor's Default and the actions or failure to act of the surety under paragraph 4. It goes on to allege that because it has satisfied all of its paragraph 4 obligations, the School District cannot possibly recover attorneys' fees under this section.

This argument, again, was considered at length and rejected by the Court in our Findings of Fact and Conclusions of Law. Specifically, we found that paragraph 6.2 obligates NAS to pay (1) any additional legal, design professional and delay costs resulting from Craft–Century's default, and (2) any additional legal, design professional and delay costs resulting from its own actions or failure to act under paragraph 4. It does not, contrary to NAS's interpretation of the bond, require that the damages result from both the Craft–Century default and the actions or failure to act of NAS. *See International Fidelity Ins. Co. v. County of Rockland,* 98 F.Supp.2d 400, 414 (S.D.N.Y.2000) ("¶ 6.2 of the Bond ... obligates the Surety for 'additional legal, design professional and delay costs resulting from the Contractor's Default'. That subparagraph ... also obligates the Surety to pay for such costs 'resulting from the actions or failure to act of the Surety under Paragraph 4'."). To accept NAS's reading would effectively render that provision a nullity. Having already engaged in a thorough discussion of this issue, the Court declines to do so again. Consequently, the School District remains entitled to recover attorneys' fees resulting from either Craft–Century's default or the actions or failure to act of NAS.

## C. *Amount of Legal Costs*

The last remaining question before the Court is the precise amount of attorneys' fees to be awarded to the School District. While we reserve ultimate determination until we have the benefit of both parties' future submissions and an evidentiary

hearing, two issues invite some instruction from the Court.

■ The first issue queries whether legal costs relating to the instant litigation are properly chargeable as damages against NAS. By virtue of the express language of the bond, NAS can only be liable for those legal costs incurred in connection with Craft–Century's default and those incurred in connection with NAS's actions or failure to act. Consequently, the School District could not recover any attorneys' fees related to the litigation initiated by NAS, as that action involved the missteps of the School District alone. Notwithstanding that finding, it is equally clear that fees relating to School District's counterclaim against NAS did, in fact, result from NAS's failure to complete the Performance Bond as required. Indeed, this Court specifically held that, although the School District failed to adequately prove damages, NAS remained liable for much of the defective work on the Linwood Elementary School. Consequently, to the extent the School District incurred legal costs in successful pursuit of part of their counterclaim,[2] they are entitled to those damages under the contract.

■ The second issue involves whether the School District may recover, not only attorneys' fees, but expenses and expert witness fees. With respect to expenses, the Court finds, and NAS does not seriously dispute, that these are indeed included in the term "legal costs" set forth in paragraph 6 of the Performance Bond and, therefore, are recoverable to the extent they result from the default of Craft–Century or from the actions or failure to act of

NAS under paragraph 4 of the Performance Bond. With respect to expert witness fees, on the other hand, the Court need not discuss whether or not they fall within the category of "legal costs." We have already awarded to the School District the professional consultant fees paid to Philip H. Mowry & Associates and H & A for inspection of the school and development of punch lists for outstanding construction items on the Linwood School. As such, these fees are no longer at issue. Defendant's only other "expert" was Richard A. Corbett, of Corrosion Testing Laboratories, Inc., who testified regarding damages to kitchen equipment. The Court found, in its Findings of Fact and Conclusions of Law, that neither Craft–Century nor NAS had any responsibility for the damaged kitchen equipment. Thus, such expert witness fees are not related to either the default of Craft–Century or the actions or failure to act of NAS under Paragraph 4 of the Performance Bond.

## III. CONCLUSION

The Performance Bond unequivocally obligates NAS to pay legal costs arising from either Craft–Century's default or the actions or failure to act of NAS under paragraph 4 of the Performance Bond. Having proven its entitlement to damages, the School District must now establish the precise amount of legal costs incurred in connection with Craft–Century's abandonment of the Contract, NAS's takeover of the Craft–Century Contract and the School District's efforts, including those expended in litigation, to have NAS either correct, complete or pay for certain defective or incomplete work that fell within

---

**2.** Notably, although the Court declined to award damages on evidentiary grounds for many of these items, we unequivocally found NAS responsible for the following items: sagging bathroom ceilings, missing insect screens, storm drains at the side of the school, depression in the playground, missing swale, cleaning costs and construction dumpsters and PECO bills. To the extent the School District incurred legal costs to have NAS either correct, complete or pay for these items, it may recover those costs as damages.

NAS's responsibility. To complete our award determination, the Court will conduct an evidentiary hearing to review the School District's submissions and consider the parties' arguments as to the reasonableness of those fees.